*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID ALLAN ROOP,

Defendant-Appellant.

UNPUBLISHED
May 16, 2019

No. 342262
Kent Circuit Court
LC No. 16-009500-FH

Before: SWARTZLE, P.J., and M. J. KELLY and TUKEL, JJ.

PER CURIAM.

Defendant, David Roop, appeals by right his jury convictions of arranging, producing, making, copying, reproducing, or financing child sexually abusive material (manufacturing child sexually abusive material), MCL 750.145c(2);[1] using a computer to commit the crime of manufacturing child sexually abusive material, MCL 752.796 and MCL 752.797(3)(f); distributing child sexual abusive material, MCL 750.145c(3), using a computer to commit the crime of distributing child sexually abusive material, MCL 752.796 and MCL 752.797(3)(d); and knowingly possessing child sexually abusive material, MCL 750.145c(4). The trial court sentenced Roop to serve 6 to 20 years in prison for each of his convictions of manufacturing child sexually abusive material and using a computer to commit that crime, to serve 2½ to 7 years in prison for each of his convictions of distributing child sexually abusive material and using a computer to commit that crime, and to serve 1 to 4 years in prison for possessing child sexually abusive material. For the reasons explained below, we affirm.

---

[1] The Legislature amended MCL 750.145c, effective March 17, 2019. 2018 PA 373. All citations to MCL 750.145c are to the version in effect during the events at issue.

## I. INEFFECTIVE ASSISTANCE

## A. STANDARD OF REVIEW

Roop first argues that his lawyer did not properly advise him about the prosecution's plea offers. He maintains that the improper advice amounts to ineffective assistance from his lawyer that warrants reversal of his convictions and the reinstatement of the offer made on the first day of trial. Because the trial court did not hold an evidentiary hearing on this claim of error, there are no factual findings to which this Court must defer and this Court's review is for mistakes that are apparent on the record alone. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), remanded on other grounds 493 Mich 864 (2012). This Court reviews de novo whether a defense lawyer's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and prejudiced his trial. *Id*. at 19-20.

## B. ANALYSIS

## 1. DENIAL OF REMAND FOR AN EVIDENTIARY HEARING

At the outset, Roop argues that it would be unfair to deny him relief on the ground that the record does not support his claim because this Court denied his motion for an evidentiary hearing to develop the record.[2] However, it is not this Court's role to speculate about a defense lawyer's acts or omissions and whether some factual development might show that the act or omission was not the result of competent professional judgment. See, e.g., *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000) (stating that the appellant bears the burden of furnishing this Court with a record that supports his or her argument). Roop had the burden to demonstrate that "further factual development would advance his claim," *People v Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009), and had to do so "by affidavit or offer of proof regarding the facts to be established at a hearing," MCR 7.211(C)(1)(a).

With regard to the claim that his lawyer deprived him of the opportunity to accept a plea offer, Roop had to show that his lawyer provided him with ineffective advice concerning the plea offer and that, but for the bad advice, he would have accepted the offer. See *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). Roop did not submit an affidavit to support his motion for an evidentiary hearing. Instead, he asserted that he was willing to testify that he did not receive proper advice and that his lawyer told him that his case was "winnable." It is not clear that a defendant can evade the affidavit requirement stated under MCR 7.211(C)(1)(a) by reciting proposed testimony and labeling it an offer of proof.

In any event, whether to order a remand is a matter committed to this Court's discretion, and this Court may consider the merits of the claim in deciding whether to grant the motion. See *People v Hernandez*, 443 Mich 1, 15; 503 NW2d 629 (1993), abrogated on other grounds by *People v Mitchell*, 454 Mich 145, 176; 560 NW2d 600 (1997). Here, even setting aside the fact

---

[2] See *People v Roop*, unpublished order of the Court of Appeal, entered July 23, 2018 (Docket No. 342262) (denying Roop's motion for a remand for an evidentiary hearing).

that Roop did not support his motion with an affidavit or an offer of proof concerning other evidence, Roop's proposed testimony did not demonstrate the need for an evidentiary hearing. Roop's appellate lawyer wrote that Roop would testify that his trial lawyer "never explained the advantages of the plea offers as compared to the risks of going to trial." He then speculated that, "if the trial attorney insisted that the trial was winnable and if that advice drove [Roop's] decision to reject the plea offers, that scenario would arguably establish the elements" necessary to obtain relief. Roop's appellate lawyer claimed that Roop would testify that he only rejected the offer on his trial lawyer's advice, but Roop's appellate lawyer did not clarify the nature of the advice that led to Roop's decision to reject the offers and did not describe Roop's understanding of the risks associated with going to trial. Instead, he argues that it was Roop's "position" that he could establish that he only went to trial because his lawyer opined that his case was "winnable." He did not provide context for the alleged claim that Roop's trial lawyer opined that the case was winnable. To the extent that these assertions amounted to an offer of proof, the assertions were so devoid of context that this Court can only speculate about what Roop proposed to establish at an evidentiary hearing. Accordingly, the offer of proof was inadequate to mandate a remand. See MCR 7.211(C)(1)(a). As a result, this Court will review the issue based on the existing record.

### 2. ADVICE PERTAINING TO PLEA DEAL

"To establish a claim of ineffective assistance of counsel, the defendant must show that 'counsel's representation fell below an objective standard of reasonableness' under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Gioglio*, 296 Mich App at 22, quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 St Ct 2052; 80 L Ed 2d 674 (1984). Under the first prong, the defendant must identify those acts or omissions that he contends were not the result of reasonable professional judgment. *Gioglio*, 296 Mich App at 22. The reviewing court must then determine whether the identified acts or omissions were outside the wide range of professionally competent assistance under the totality of the circumstances. *Id*.

Roop primarily argues that his trial lawyer failed to properly advise him about the risks and benefits of the prosecution's plea offers. He claims that, had his lawyer explained that his case was unwinnable, he would have accepted the prosecution's plea offer on the first day of trial. As noted, Roop must show that his lawyer's advice concerning the plea offers was deficient and that, but for the bad advice, he would have accepted the offer. See *Douglas*, 496 Mich at 592.

On the first day of trial, the prosecution placed a plea offer on the record. The prosecutor stated that he had offered Roop the opportunity to plead guilty to the distribution and possession of child sexually abusive materials. The prosecutor indicated that he calculated the sentencing guidelines to provide a recommended range of 10 to 23 months in prison. He noted that the range would be 45 to 75 months in prison if Roop were to proceed to trial and be convicted as charged. The prosecutor also warned that Roop faced possible consecutive sentencing if he were to proceed to trial.

After the prosecutor summarized the offer, Roop's lawyer told the trial court that he went over the offer with Roop and that Roop apparently did not wish to accept it. He stated,

> we've been over this. I do appreciate [the prosecutor], this is an improvement from the offers we've had before. I went over it with my client. I went over the different scenarios, the risks involved, and he can speak for himself. My understanding is he wishes to have a trial.

The trial court agreed that Roop had the right to insist on a trial but nevertheless summarized the offer again, noting that the offer called for "a relatively short" period of jail or imprisonment and might even result in probation. The court added that the outcome might be dramatically different if Roop were to risk trial:

> I don't know anything about the case, and I don't mean to advise you, that's your lawyer's job. I just want you to understand what the potential consequences are. If you go to trial and things go badly for you, you're going to be doing a fairly lengthy stretch in prison. If you take advantage of the plea offer, you can save yourself quite potentially years behind bars. So it's a fairly dramatic difference. As long as you understand that and want to take that risk, it's perfectly agreeable with me. I don't have to do the time. But if there's any question about it, you might want to confer with your lawyer and make sure you are satisfied and comfortable with whatever choice you make.[3]

The trial court asked if Roop had any questions about that, and Roop responded, "No, sir." The trial court inquired if Roop wanted to confer with his lawyer "any further" and Roop stated that he was "ready" to proceed.

This Court presumes that a defense lawyer provided effective assistance, and it is a heavy burden to overcome the presumption. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). Here, Roop's lawyer indicated on the record that he went over the improved plea offer with Roop and discussed the "different scenarios" and the "risks involved." There is no record evidence that the discussion of the different scenarios and the risks did not include a fair assessment of the evidence against Roop and the strong likelihood that he would be convicted. See *People v Corteway*, 212 Mich App 442, 445; 538 NW2d 60 (1995) (stating that a defense lawyer must provide the defendant with sufficient information to "make an intelligent and informed choice from among his alternative courses of action"). Moreover, the prosecutor and the trial court each reiterated the dramatic difference between the potential sentence after a conviction at trial with the probable sentence after accepting the plea offer. Despite these cautionary statements, Roop asserted that he did not have any questions and he declined the trial

---

[3] Roop's appellate lawyer claims that Roop did not understand the import of these offers and had been advised that "the plea offers gave him no advantage." The record demonstrates that the prosecutor and trial court informed Roop that the plea offer provided him with substantial advantages—namely, the opportunity to avoid consecutive sentencing and to have a dramatically shorter minimum sentence.

court's invitation to confer further with his lawyer before rejecting the offer. There is no evidence on this record that Roop's lawyer's advice about the risks and benefits associated with the plea offer was improper or deficient in any way. Consequently, Roop has not overcome the presumption that his lawyer provided effective assistance when handling the plea offer. See *Gioglio*, 296 Mich App at 22-23.

On appeal, Roop notes other instances that he claims demonstrate that his lawyer did not provide effective assistance. However, he argues that these other instances lend support to the contention that he did not receive effective assistance during plea negotiations. He does not contend that they independently warrant a new trial. Nevertheless, we address each in turn.

Roop argues that his lawyer had "no tactical or strategic reason" for not moving to suppress Roop's statement to police officers on the day the officers searched his home on the ground that the officers failed to advise him of his rights as required by the decision in *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). In *Miranda*, the Supreme Court determined that there was a risk of improper coercion when a suspect is subjected to custodial interrogation. *Id.* at 455-456. To mitigate the potential for coercion, the Court required officers to advise the suspect of his or her fundamental rights before conducting a custodial interrogation. *People v Vaughn*, 291 Mich App 183, 188-189; 804 NW2d 764 (2010), vacated not in relevant part 491 Mich 642 (2012). " '[U]nless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against' " the person interrogated. *Id.* at 189, quoting *Miranda*, 384 US at 479.

A police officer has no obligation to administer the warnings required under *Miranda* until "there has been such a restriction on a person's freedom as to render him in custody." *Stansbury v California*, 511 US 318, 322; 114 S Ct 1526; 128 L Ed 2d 293 (1994) (quotation marks and citations omitted). Courts determine whether a person was in custody at the time of his or her interrogation by examining all the circumstances surrounding the interrogation to determine how a reasonable person would gauge the breadth of his or her freedom of action under the same circumstances. *Yarborough v Alvarado*, 541 US 652, 662-663; 124 S Ct 2140; 158 L Ed 2d 938 (2004). The key inquiry is whether under the totality of the circumstances a reasonable person would have felt at liberty to terminate the interrogation and leave. *Vaughn*, 291 Mich App at 189. "Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Howes v Fields*, 565 US 499, 509; 132 S Ct 1181; 182 L Ed 2d 17 (2012) (citations omitted).

Here, the circumstances did not suggest that a reasonable person in Roop's position would not have felt at liberty to terminate the interview and leave the car. See *Yarborough*, 541 US at 662-663. Although Roop claimed that he felt overwhelmed and thought he had to talk to them, Roop was not secured in the back of the car, had been told by the officers he did not have to talk and that he was free to leave, and the officers provided him with water and inquired if he was okay. The interview was also relatively short—about 50 minutes—and occurred in a car just outside Roop's home. Under these circumstances, Roop's lawyer could reasonably conclude that it would be meritless to move to suppress Roop's statement on the ground that the officers improperly failed to advise Roop of his rights. See *Gioglio*, 296 Mich App at 22-23 (stating that this Court must entertain the range of possible reasons for defense counsel's actions and, if this

Court concludes that there might have been a legitimate strategic reason for the act or omission, this Court must conclude that defense counsel provided effective assistance). Roop's lawyer has no obligation to file a meritless motion. See *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003). Consequently, Roop has not shown that his lawyer provided ineffective assistance by failing to move to suppress Roop's statement.

Roop next argues that his lawyer's investigation was deficient. Roop does not identify any defense that might have been missed as a result of an allegedly poor investigation. Rather, he argues that, had his lawyer properly investigated, he would have realized that Roop's case was unwinnable and, for that reason, should have prevented Roop from asserting his right to proceed to trial. There is no evidence on the record that Roop's lawyer was not well aware of the weakness inherent in Roop's case. Furthermore, the record shows that Roop's lawyer put on a viable defense: he presented evidence through Roop's testimony that Roop inadvertently downloaded the child sexually abusive material and did not intend to create a copy or distribute it, and did not intend to use his computer to commit those crimes. See *People v Flick*, 487 Mich 1, 13-14; 790 NW2d 295 (2010) (stating that to be guilty of possessing child sexually abusive material the prosecution must prove that the defendant knowingly possessed the material); *People v Tombs*, 472 Mich 446, 456-459; 697 NW2d 494 (2005) (opinion by KELLY, J.) (holding that the defendant must have intended to distribute the child sexually abusive material to be guilty of distributing it); MCL 750.145c(2) (stating that the defendant must have had—in relevant part—the intent to create a copy of child sexually abusive material); see also MCL 752.796(1) (making it a crime to use a computer to commit a crime). Roop has not demonstrated that his lawyer failed to properly investigate the case and that his failure prevented Roop from putting on a defense. See *Chapo*, 283 Mich App at 371 (stating that the defendant must generally show that his lawyer's poor investigation deprived him or her of a substantial defense).

Roop similarly complains that his lawyer's failure to make an opening statement demonstrated that his lawyer did not know the law. Whether to make an opening statement is a matter of subjective judgment that can rarely—if ever—be the basis of a claim for ineffective-assistance claim. *People v Pawelczak*, 125 Mich App 231, 242; 336 NW2d 453 (1983). In any event, as already noted, Roop's lawyer raised a valid defense. And a reasonable defense lawyer in his position might waive an opening statement to avoid having to comment on the strength of the evidence against his client. Thus, Roop failed to overcome the presumption that defense counsel had a valid reason for waiving his opening statement. See *Gioglio*, 296 Mich App at 22-23.

Roop next contends that his lawyer did not advise him about the prosecution's likely questions on cross-examination and he relates that it is his "position" that his lawyer "told him that he was credible and that the jury would believe him." Roop argues that, had he been properly prepared, he would not have elected to testify and would have accepted the plea. There is no record evidence that Roop's lawyer did not adequately discuss the risks and benefits of testifying at trial. There is also no record evidence that Roop's lawyer failed to adequately prepare Roop. Moreover, Roop had to have been aware that the prosecutor would focus his questions on Roop's incriminating statements and the evidence that he knowingly downloaded, possessed, and made available for distribution, numerous files of child sexually abusive material using his computer. Additionally, given the magnitude of the evidence against Roop, it was essential for Roop to testify and try to explain how his statements and actions might not be

indicative of guilt. Consequently, on this record Roop has not shown that his lawyer inadequately advised him on the decision to testify or failed to adequately prepare him to testify. See *Gioglio*, 296 Mich App at 22-23.

Finally, Roop complains that his lawyer provided ineffective assistance by calling a psychologist, David Berghuis, to testify without first ensuring that Berghuis's opinion was based on all the evidence. Roop claims that he suffered prejudice because the prosecutor's cross-examination rendered Berghuis's opinion worthless. Roop has not identified any record evidence tending to suggest that his lawyer was unaware of the flaws in Berghuis's opinion. Consequently, he has not overcome the presumption that his lawyer provided effective assistance. See *Gioglio*, 296 Mich App at 22-23. Further, Berghuis testified that Roop did not appear to have deviant sexual interests in children, which tended to bolster Roop's testimony that he was not sexually interested in children and lent some credibility to the claim that he did not knowingly and intentionally download child sexually abusive material. It was, accordingly, relevant. See MRE 401. Berghuis also noted that the tests that he used controlled for answers that were intended to manipulate the results. As a result, while the prosecutor effectively cross-examined Berghuis about the limits of his opinion, the jury was still able to draw a favorable inference from his testimony. For that reason, Roop cannot show that any deficiency in his lawyer's preparation of this witness affected the outcome of the proceedings. *Id.* at 23.

## II. SENTENCING

### A. STANDARD OF REVIEW

Roop next argues that the trial court erred when it scored offense variables (OVs) 4, 10, 12, and 13. This Court reviews for clear error a trial court's findings in support of a particular score under the sentencing guidelines, but it reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A trial court's finding is clearly erroneous when this Court is left with the definite and firm conviction that it had made a mistake. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The prosecution bears the burden to establish the facts in support of a score by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).

### B. ANALYSIS

Roop asserts that the trial court could not assign points under OV 12 for conduct that was the basis for the charges against him, and that led to his convictions because that evidence led to the assessment of points under OV 13. For that reason, he claims that the points assigned under OV 12 should be reduced to zero. Roop relies on this Court's decision in *People v Bemer*, 286 Mich App 26; 777 NW2d 464 (2009), for the proposition that the trial court erred when it scored OV 12 using conduct that was scored under OV 13.

OV 12 addresses contemporaneous felonious criminal acts. MCL 777.42(1). A trial court must assign 25 points under OV 12 if the defendant committed "[t]hree or more contemporaneous felonious criminal acts involving crimes against a person . . . ." MCL

777.42(1)(a). A felonious criminal act is contemporaneous if done "within 24 hours of the sentencing offense" and "has not and will not result in a separate conviction." MCL 777.42(2).

OV 13, by contrast, applies to a continuing pattern of criminal behavior. MCL 777.43(1). Under OV 13, the trial court must assess 25 points if, in relevant part, the defendant's "offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). Notably, the Legislature provided that the trial court must consider all crimes that occurred within a 5-year period, including the sentencing offense even if the offense did not result in a conviction. MCL 777.43(2)(a). Additionally, the Legislature mandated that the trial court cannot score conduct under OV 13 that was used to score OV 12, unless the conduct related to membership in an organized criminal group or that was gang-related. MCL 777.43(2)(c).

In *Bemer*, this Court examined the interplay between OV 12 and OV 13. In doing so, this Court examined the statutory language used and determined that the Legislature required trial courts to score OV 12 on the basis of all conduct that could be scored under that variable before proceeding to score OV 13. See *Bemer*, 286 Mich App at 35. This Court further held that the trial court cannot disregard its obligation to score conduct under OV 12 in order to score the conduct under OV 13. *Id*.

The evidence at trial demonstrated that Roop made copies of 43 separate items of child sexually abusive material, that he possessed those copies, and that he had them available for distribution to others all on the same day. Accordingly, there was evidence that he committed—at the very least—43 separate offenses involving child sexually abusive material. However, to the extent that his conduct gave rise to the three convictions involving child sexually abusive material at issue in this case, the trial court could not consider that conduct when scoring OV 12. See MCL 777.42(2)(a) (providing that the conduct cannot be conduct that had or will result in a conviction). Applying the holding in *Bemer* to the facts of this case, the trial court was *required* to score OV 12 on the basis of the crimes he committed involving child sexually abusive material that had not and would not result in additional convictions. See *Bemer*, 286 Mich App at 35.

Yet, as stated above, the record supported a finding that Roop committed at least 40 additional felonies involving child sexually abusive material that had not and would not result in a conviction. As such, the trial court had to assign 25 points under OV 12. See MCL 777.42(1)(a). The Court in *Bemer* also explained that, after properly scoring OV 12, the trial court had to score OV 13 on the basis of the conduct that could not be scored under OV 12. *Bemer*, 286 Mich App at 35-37. Because his three convictions involving child sexually abusive material could not be used to score OV 12, and were part of a pattern of felonious criminal activity involving crimes against a person, see MCL 777.16g, the trial court was required to assign 25 points under OV 13 on the basis of those convictions. See *Bemer*, 286 Mich App at 35-37; MCL 777.43(1)(c).

Roop maintains that the jury considered the conduct involving all of the child sexually abusive material at issue when determining his guilt. As a result, he claims that the conduct was not "uncharged conduct" and could not be considered under OV 12. However, the Legislature did not refer to "uncharged conduct" at any point in MCL 777.42. Rather, it referred to "felonious criminal acts" that did not and would not result in a "separate conviction." See MCL

777.42(2). The fact that the prosecutor presented evidence to the jury showing that Roop engaged in additional criminal conduct involving child sexually abusive material is irrelevant under the statute. Because the conduct involving the other child sexually abusive material amounted to criminal acts that did not give rise to and would not give rise to convictions, if the trial court found that Roop committed those felonious criminal acts and that they would not result in convictions, it had to score OV 12 on the basis of that conduct. See MCL 777.42(1). The trial court did not err when it assigned 25 points under both OV 12 and OV 13.

Roop also challenges the trial court's scoring of OV 4 and OV 10. Under MCL 777.34, the trial court had to assign 10 points to OV 4 if it found that a victim suffered serious psychological injury that required or may require professional treatment. As for OV 10, the Legislature provided that the trial court must assign 10 points if, in relevant part, the offender exploited a victim's youth as part of the offense. See MCL 777.40(1)(b).[4]

On appeal, Roop notes that there was no evidence concerning any psychological injury that the persons depicted in the materials actually suffered, and no evidence that he himself exploited anyone. He suggests that the trial court must have relied on *People v Needham*, 299 Mich App 251; 829 NW2d 329 (2013), to score these variables. He claims that our Supreme Court condemned the mandatory scoring of offense variables in *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). He then argues that the trial court could not score OV 4 and OV 10 by relying on the analysis stated in *Needham* because that decision essentially makes the scoring of OV 4 and OV 10 mandatory in cases involving child sexually abusive material.

In *Lockridge*, our Supreme Court determined that Michigan's sentencing guidelines were unconstitutional to the extent that the guidelines increased the defendant's *mandatory* minimum sentence on the basis of judicial fact-finding. *Id*. at 364. The Court remedied the problem—not by eliminating judicial fact-finding—but by rendering the guidelines advisory, rather than mandatory. *Id*. at 364-365. Indeed, our Supreme Court stated that trial courts must still accurately score the guidelines and must consult them when imposing sentence. See *id*. at 391-392, 392 n 28. Therefore, the trial court did not have the discretion to ignore any offense variable; it had to score each of the applicable variables and had to assess the highest number of points supported by the evidence for each variable.

The decision in *Lockridge* also did not undermine the continued validity of the decision in *Needham*. In *Needham*, this Court addressed whether a trial court could assign 10 points under OV 10 for the exploitation of a victim's youth for an offense involving child sexually abusive material even though there was no evidence that the defendant had any contact with the child depicted. *Needham*, 299 Mich App at 252. The Court held that the victim in a case involving child sexually abusive material is the child depicted. The Court further held that the end user of child pornography exploits the youthful victim by creating a market for child pornography and participates in the continued exploitation of the victim anew every time the image is viewed. *Id*. at 255-258. For those reasons, a defendant convicted of possessing child

---

[4] The Legislature amended these statutes effective March 28, 2019. See 2018 PA 652. The citations are to the statutes in effect when Roop committed the offenses at issue.

sexually abusive materials, exploits the child victim by downloading and viewing the image even though he or she has never had contact with the victim. To the extent that *Needham* stands for the proposition that downloading and viewing child sexually abusive materials can constitute the exploitation of the youthful victim depicted in the images, even in the absence of evidence of actual contact with the victim, that decision is binding precedent. See MCR 7.215(C)(2). Accordingly, because the evidence showed that Roop downloaded a video in which a child's youth was clearly exploited, the trial court could find that Roop participated in the exploitation of that victim by downloading, viewing, and distributing the video. Roop has not shown that the trial court erred when it assigned 10 points under OV 10. See MCL 777.40(1)(b).

Similarly, extending the logic of *Needham* to OV 4, just like a defendant can participate in the exploitation of an actual victim by viewing, downloading, or distributing child sexually abusive materials, a defendant convicted of such an offense participates in the psychological injury occasioned by the original child sexually abusive conduct when the defendant downloads, views, or distributes the material. See *Needham*, 299 Mich App at 258 (holding that the sentencing guidelines do not require direct contact between the offender and the victim). Therefore, the trial court did not err when it assigned 10 points under OV 4 on the basis of the psychological harm reported by the original victim.

Roop has not shown that the trial court improperly scored any offense variables.

Affirmed.

/s/ Brock A. Swartzle
/s/ Michael J. Kelly
/s/ Jonathan Tukel