*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STEVEN LEE FOUPHT,

        Defendant-Appellant.

UNPUBLISHED
January 4, 2024

No. 364483
Allegan Circuit Court
LC No. 2021-024926-FC

Before: FEENEY, P.J., and RICK and HOOD, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the sentence imposed after he pleaded guilty to eight counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (individual 17 years of age or older against an individual less than 13 years of age); eight counts of aggravated producing of child sexually abusive activity or material, MCL 750.145c(2)(b); and eight counts of using a computer to commit a crime, MCL 752.796. The trial court sentenced defendant to serve concurrent terms of 50 to 75 years' imprisonment for each count of CSC-I, 16 to 25 years' imprisonment for each count of aggravated producing of child sexually abusive activity or material, and 12 to 20 years' imprisonment for each count of using a computer to commit a crime. We affirm.

## I. FACTUAL BACKGROUND

This case stems from defendant's sexual abuse of two victims: HD, a three-year-old toddler, and ND, a 10-year-old girl. The abuse occurred over a two-year period. During that time, defendant produced 29 videos and a multitude of images of himself sexually assaulting, by penetration, both HD and ND. A search of defendant's home revealed various media drives; a camera; a shotgun; a rifle; sex toys and other paraphernalia. In a shed attached to the house, police found a hidden panel that contained various sex items, a cell phone, and three pairs of underwear.

---

[1] *People v Foupht*, unpublished order of the Court of Appeals, entered February 9, 2023 (Docket No. 364483).

Defendant admitted that the items found in his home were his and that he was in the images and videos found on the several devices that police searched during a police interview. Defendant identified both of the victims. He denied having any additional victims.

Defendant was charged with 10 counts of CSC-I, 10 counts of aggravated producing of child sexually abusive activity or material, and 10 counts of using a computer to commit a crime. The prosecutor offered defendant a plea deal, which required defendant to plead guilty to eight counts of CSC-I, eight counts of aggravated producing of child sexually abusive activity or material, and eight counts of using a computer to commit a crime. In exchange, a total of six counts would be dismissed: two counts of CSC-I, two counts of aggravated producing of child sexually abusive activity or material, and two counts of using a computer to commit a crime. The prosecutor also agreed to recommend concurrent sentences for all the offenses to which defendant pleaded guilty. Defendant accepted the plea deal.

In accordance with the plea agreement, the trial court sentenced defendant to 50 to 75 years' imprisonment for each count of CSC-I, to be served concurrently. The trial court noted that, when issuing a sentence for the CSC-I convictions, it was required to impose the statutory minimum term of 25 years, but it was also permitted to depart from the statutory minimum if the sentence was reasonable and proportionate. The trial court justified its upward departure from the statutory minimum on the basis of factors not accounted for by the guidelines, including defendant's predatory conduct, the length of the abuse, the relationship that defendant had with the victims, and the serious psychological impact that defendant's conduct had on the victims. The court also addressed factors given inadequate weight by the guidelines, including the number and egregious nature of the offense, defendant's minimal potential for rehabilitation, and his perceived lack of remorse. This appeal followed.

## II. ANALYSIS

Defendant argues that his sentence of 50 to 75 years' imprisonment was unreasonable and disproportionate. Defendant contends that the trial court erroneously relied on factors that the guidelines already considered, as well as wholly impermissible reasons, and that the court ultimately failed to justify the extent of the departure. We disagree.

A trial court's upward departure from a defendant's calculated guidelines range is reviewed for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). This Court reviews "the reasonableness of a sentence for an abuse of the trial court's discretion." *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). Generally, "[a] trial court abuses its discretion if the minimum sentence imposed falls outside the range of principled outcomes." *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). A trial court also abuses its discretion if it imposes a sentence that "violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

In *Lockridge*, 498 Mich at 391, the Michigan Supreme Court held that the minimum sentencing guidelines are only advisory. However, those guidelines "remain a highly relevant consideration in a trial court's exercise of sentencing discretion." "[T]he relevant question for appellate courts reviewing a sentence for reasonableness" is "whether the trial court abused its

discretion by violating the principle of proportionality . . . ." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). To determine if an upward departure is more proportionate than a sentence within the guidelines range, a trial court may consider factors including "(1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (citations omitted). In making a proportionality determination, a trial court must "justify the sentence imposed in order to facilitate appellate review." *Lockridge*, 498 Mich at 392. "This includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Smith*, 482 Mich at 311.

## A. FACTORS NOT CONSIDERED BY THE GUIDELINES

Defendant first argues that the trial court abused its discretion by considering factors that it believed were not accounted for by the guidelines, including the predatory nature of his conduct, the youth of the victims, the impact on the victims and their families, and the length of the abuse. He claims that these factors were already accounted for by the offenses with which he was charged. The first factor the trial court considered was defendant's predatory conduct. Predatory conduct is accounted for by the guidelines through offense variable (OV) 10. MCL 777.40(1)(a). MCL 777.40 provides that, in assessing points to a defendant for exploiting a vulnerable victim, 15 points may be assessed if "[p]redatory conduct was involved[.]" *Id*. In *People v Cannon*, 481 Mich 152, 162; 749 NW2d 257 (2008), the Supreme Court held that, in scoring OV 10, a trial court must answer three questions in the affirmative:

> (1) Did the offender engage in conduct before the commission of the offense? (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation? (3) Was the victimization the offender's primary purpose for engaging in the preoffense conduct?

In this case, the trial court noted it was hesitant to assess 15 points to defendant for OV 10 on the basis of defendant's predatory conduct because OV 10 requires a conviction-specific score. Given the sheer number of defendant's convictions, the court reasoned that it would be difficult to determine whether predatory conduct was involved in every one of the acts. The court appeared to believe it would be safer to score OV 10 at 10 points. Ten points may be assessed under this OV if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b).

Nevertheless, the court later noted that it considered defendant's predatory conduct in departing from the guidelines. The court explained:

> [W]hen considering [defendant]'s predatory conduct, although it wasn't scored under the guidelines, I—because that offense variable requires offense specific conduct, it's clear that [defendant] did engage in predatory conduct. That con— that predatory conduct is not considered by the guidelines in this scoring, specifically because of the courts of appeals ruling regarding offense specific scoring.

-3-

But he certainly did engage in predatory conduct with regards to all of these incidents involving both of these victims. And that's another reason to justify a— a departure sentence.

The record supports the trial court's reasoning on this point. Predatory conduct generally involves "preoffense" conduct. See *Cannon*, 481 Mich at 162. This Court has previously concluded that a defendant engaged in preoffense conduct when the victims "testified about numerous sexual assaults going on for a very long time before disclosure." *People v Steele*, 283 Mich App 472, 491; 769 NW2d 256 (2009). Likewise, in this case, defendant carried out his abuse of the children for over two years before his actions were discovered. There were also allegations against defendant for CSC related to the abuse of HD over a year before defendant was charged with the current convictions. This lengthy period of abuse before defendant was charged indicates that he engaged in preoffense conduct.

Further, defendant's relationship with the victims before the criminal conduct occurred could also be considered preoffense conduct. The victims were both very young—one a toddler the other just ten years old. They believed defendant was someone they could trust. Defendant was related to HD and was formerly close friends with ND's father. Because of the victims' tender ages and defendant's position in their lives as a trustworthy adult figure, defendant's actions suggest that his conduct was directed at these two victims specifically because of their apparent susceptibility to persuasion and physical restraint. *Id*. Defendant was also aware of these factors through his preoffense conduct in interacting with the victims to gain their trust.

The last and most challenging question to answer is whether the victimization of the children was defendant's primary purpose for engaging in the preoffense conduct. *Id*. Defendant's relationship with the victims presents a unique circumstance. It is difficult to ascertain whether defendant's actions in getting to know the victims and earning their trust was primarily to victimize them. However, the record indicates that defendant would offer to babysit ND, who was his girlfriend's child. He would then wait for his girlfriend to go to sleep before undressing in front of ND and forcing her to engage in sexual acts with him. The Supreme Court has stated that "[a] lion that waits near a watering hole hoping that a herd of antelope will come to drink is not engaging in conduct directed at a victim"; however, "a lion that sees antelope, determines which is the weakest, and stalks it until the opportunity arises to attack it engages in conduct directed at a victim." *Cannon*, 481 Mich at 160. Defendant purposefully chose victims who trusted him, who were easily accessible to him, and whose parents trusted him. Defendant did not merely stumble upon these victims by chance—he chose them specifically. Because of that, his actions constitute predatory conduct. The trial court was unable to consider defendant's predatory conduct under OV 10, see *People v McGraw*, 484 Mich 120, 124; 771 NW2d 655 (2009), but properly considered such conduct when imposing a sentence that departed from the statutory minimum.

The trial court also considered the well-being of the victims to justify defendant's sentence. The trial court acknowledged that OV 7 addresses psychological injury to a victim, MCL 777.34(1), but it noted that nonserious psychological injury to the victims, which is not contemplated by OV 7, should also be considered. The trial court explained that defendant's conduct would "impact these victims for a very long time" and would impair their ability to have normal romantic relationships. Once again, the record supports the trial court's ruling. ND's father stated that ND has not wanted to discuss what defendant did to her and he fears that she has

fallen behind developmentally as a result of defendant's abuse. HD's mother stated that HD is confused about boundaries and appropriate behavior for children and adults, and often experiences angry outbursts and meltdowns. She also noted that, following the initial CSC allegations against defendant, her family verbally abused HD, calling her a liar and a bad child for disclosing defendant's actions. Because the guidelines do not account for this type of psychological injury to the victims, the trial court properly considered its impact in departing from the statutory minimum sentence.

The trial court also concluded that the length of the abuse justified an upward departure from the statutory minimum. The trial court reasoned that the fact that the abuse occurred over a lengthy period created a larger impact on not just the victims, but also the victims' families. Our Supreme Court has held that when sexual abuse occurs over a long period, it is a justifiable reason for departure from the statutory minimum. *Smith*, 482 Mich at 301. This is because "the victim undoubtedly suffered psychological stress from the realization that defendant might abuse her again and again." *Id*. Further, a long period of abuse "is a fact that does not exist in all criminal sexual conduct cases"; therefore, it can be properly considered in departing from the statutory minimum. *Id*. Thus, the trial court justifiably determined that the two-year long period of abuse HD and ND underwent was not properly accounted for by the guidelines.

And while the sentencing guidelines permitted the trial court to consider serious psychological injury to members of the victims' families, the guidelines did not consider the long-term effects of defendant's conduct on the victims' families. This Court previously held that, "[a]lthough OV 4 accounts for psychological injuries suffered by victims, it does not adequately consider the ways in which an offense affects familial relationships, nor does it always account for the unique psychological injuries suffered by individual victims." *People v Anderson*, 298 Mich App 178, 189; 825 NW2d 678 (2012) (citations omitted). This Court has also held that the guidelines "do not take into account the violation of the victim's parents' trust in [a] defendant" when a defendant victimizes their child. *People v Armstrong*, 247 Mich App 423, 425; 636 NW2d 785 (2001).

Here, HD's mother stated that she was sexually abused as a child and that defendant's conduct triggered her post-traumatic stress disorder. Further, she stopped working in order to be there for HD because she was afraid to leave her in the care of anyone else. The trial court stated that dealing with a situation of this kind "leads to stress and anguish on behalf of the parents and people who are caring for the children." Defendant was someone whom HD's and ND's parents believed that they could trust around their children, and that kind of betrayal of trust is not contemplated by the guidelines. Defendant's actions impacted not only the victims but the victims' parents to such a degree that they felt lost and uncertain about how to move forward. Accordingly, the trial court properly considered the psychological toll that defendant's actions took, and will continue to take, on the victims' parents.

The trial court also supported its departure from the statutory minimum on the basis of defendant's relationship with the victims. The Supreme Court has recognized that "[i]n some cases, there may be important sentencing factors that are not included in the sentencing guidelines," and "[p]erhaps the clearest example of such a factor is the prior relationship, if any, between the victim and the offender." *Milbourn*, 435 Mich at 660. Therefore, "[a] prior relationship between a victim and an offender can be a very mitigating circumstance or a very

aggravating circumstance, depending upon the history of interaction between the parties." *Id*. at 660-661. In this case, the relationship between defendant and the victims is certainly an aggravating circumstance. Defendant is related to HD and was close friends with ND's father. Therefore, defendant had access to both victims and could easily take advantage of their trust. The trial court properly determined that the relationship between defendant and the victims in this case warranted a departure from the statutory minimum.

Ultimately, we conclude that the trial court did not abuse its discretion when it considered factors not accounted for by the guidelines in supporting its departure from the statutory minimum sentence.

## B. FACTORS GIVEN INADEQUATE WEIGHT BY THE GUIDELINES

Defendant next argues that the trial court abused its discretion by considering factors that it believed were given inadequate weight by the guidelines because those factors were already correctly scored by the guidelines. The trial court specifically supported its departure from the statutory minimum with factors it believed were given inadequate weight by the guidelines, including the number of offenses and the egregious nature of those offenses. Although "[a] departure cannot be justified on the sole basis that a crime is heinous," because "[a]ll criminal-sexual-conduct cases involving young children are heinous," *Smith*, 482 Mich at 311 n 42, the number of offenses and the egregious nature of those offenses was properly considered by the trial court.

The trial court noted that the sheer number of offenses committed helped justify the sentence that it imposed. Although the court assessed the highest number of points possible for OV 11—50 points—those points only contemplate "[t]wo or more criminal sexual penetrations . . . ." MCL 777.41(1)(a). This Court has held that "points can be assessed under OV 11 on the basis of uncharged sexual penetrations" so long as "they arise out of the sentencing offense." *People v Lampe*, 327 Mich App 104, 119; 933 NW2d 314 (2019). There are 29 videos with multiple penetrations in each video. Even if the trial court calculated the number of penetrations conservatively by only accounting for one penetration per video, that is still 27 more penetrations than the 50 points assessed under OV 11 accounts for. It seems unlikely that 50 points adequately accounted for a number of penetrations that was at least 13 times more than the base number contemplated by the points. Since defendant's score for OV 11 grossly underscored the number of individual acts of sexual abuse perpetrated against HD and ND, the trial court properly considered the additional penetrations in departing from the statutory minimum.

Defendant was also assessed 50 points—the highest score available—for OV 13, which is proper when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age[.]" MCL 777.43(1)(a). In determining the score, all crimes within a five-year period are considered, regardless of whether the offense resulted in a conviction. MCL 777.43(2)(a). In this case, there were 29 videos that each contained multiple penetrations. The trial court properly considered the fact that the 50 points it assessed for OV 13 did not fully account for the number of individual acts of sexual abuse that occurred. The trial court thus did not abuse its discretion by considering the number of penetrations beyond those accounted for by OV 13 in departing from the statutory minimum.

In addition to the OVs, defendant was assessed 20 points—again, the maximum score available—for prior record variable (PRV) 7. Twenty points are assessed under PRV 7 if "[t]he offender has 2 or more subsequent or concurrent convictions[.]" MCL 777.57(1)(a). In this case, defendant pleaded guilty to 24 charges, including eight counts of CSC-I. Including all defendant's convictions related to the sentencing offense, defendant's concurrent convictions are equal to 12 times the amount contemplated by the 20 points assessed to PRV 7. The trial court could properly consider this in departing from the statutory minimum.

Our Supreme Court has held that "[i]f a defendant has a low PRV score but an OV score over 100, the court may render a proportionate sentence above the highest minimum for someone with a similar PRV score." *Smith*, 482 Mich at 308. "This is because the Legislature did not contemplate a defendant with such a high OV score, given that it used 100 OV points as the maximum for the grid." *Id*. at 308-309. In *Smith*, the Supreme Court concluded that the trial court abused its discretion by departing from the recommended guidelines on this basis. *Id*. at 307. "The trial judge sentenced defendant as if his OV and PRV scores corresponded to the E–VI, F–V, or F–VI cell of the grid"; however, in order for the defendant's sentence to fall within those guidelines, "the judge would have had to assess 20 to 40 additional OV points and 30 to 45 additional PRV points." *Id*. The Supreme Court concluded that the trial court did not justify such an extensive departure. *Id*.

In contrast, defendant has a low PRV score, but a very high OV score. He was scored at the highest level possible—OV Level VI—which is the proper level for any defendant with a total OV score of 100 points or higher. Defendant's total OV score was 185 points—85 points higher than the amount necessary to land him in the highest OV level. In order for the sentence imposed to fall within the recommended guidelines, defendant would have had to score at an OV Level VI and a PRV Level E. See MCL 777.62. When a defendant scores at those levels, the recommended sentence is 225 to 375 months or life imprisonment. See *id*. Defendant would have needed to be assessed 30 additional PRV points and no additional OV points for these recommended guidelines to apply. On the basis of defendant's high OV score—a score that does not even adequately account for the number of convictions and criminal sexual penetrations involved in this case—the trial court rendered a proportionate sentence that was higher than would have been appropriate for a defendant with the same PRV score and a lower OV score. In doing this, the trial court viewed defendant and his conduct holistically, finding that the egregious nature of his offenses warranted a more severe punishment than the guidelines called for, despite the fact that defendant had no prior convictions.

Beyond defendant's OV and PRV scores, defendant also pleaded guilty to only eight counts of criminal sexual conduct. This Court "has recognized that a sentencing court may consider the nature of a plea bargain and the charges that were dismissed in exchange for the plea for which the court is sentencing." *People v Coulter (After Remand)*, 205 Mich App 453, 456; 517 NW2d 827 (1994). Defendant's plea deal eliminated the possibility of serving consecutive sentences, which greatly restricted his sentence. The trial court did not abuse its discretion by contemplating this fact, and the fact that six of defendant's charges were dismissed pursuant to the plea deal, in justifying its departure from the statutory minimum. That defendant could have been sentenced to 250 years' imprisonment through consecutive terms of the statutory minimum term of 25-years for each of his 10 original CSC-I charges is a compelling factor for the trial court to consider in determining a proportionate sentence to defendant and his criminal conduct.

For the foregoing reasons the trial court did not abuse its discretion by considering factors not given adequate weight by the guidelines, including the number of offenses and egregious nature of those offenses, in supporting its departure from the statutory minimum sentence.

## C. ADDITIONAL FACTORS

Defendant last argues that the trial court abused its discretion by considering his inconsistent remorse, inability to justify his actions, crying during his presentence interview, and recording of the acts as indicators that defendant had minimal potential for rehabilitation. The Supreme Court has held that a defendant's lack of remorse is a legitimate consideration in determining a sentence. *People v Houston*, 448 Mich 312, 323; 532 NW2d 508 (1995). Further, "evidence of a lack of remorse can be considered in determining an individual's potential for rehabilitation." *People v Wesley*, 428 Mich 708, 711; 411 NW2d 159 (1987). It is also "permissible to infer a defendant's lack of remorse from statements contained in presentence reports." *Id*. at 714.

In departing from the statutory minimum, the trial court reasoned that there were several indications that defendant lacked the ability to rehabilitate, including the inconsistent nature of his remorse and his selfish behavior. The trial court stated that while defendant expressed remorse at the sentencing hearing, the presentence investigation report indicated that defendant "did not express remorse during the process of the presentence interview," which is "relevant with regards to rehabilitation." The trial court also noted that defendant cried during the presentence interview because he feared that he would not be able to see his own children again, which showed that defendant was only focusing on himself and "not the effect that his behavior had on someone else."

Even though defendant expressed remorse for his actions at the sentencing hearing, the trial court did not abuse its discretion when it considered defendant's lack of remorse during the presentence interview. Defendant argues that the trial court's consideration of him crying during the presentence interview was improper but presents no basis as to why it was improper. It is clear that the court's main focus was on the fact that defendant seemed to only be crying during the presentence interview out of concern for himself and his ability to see his own children in the future. The trial court relied on defendant's behavior during the presentence interview to support a conclusion that defendant had minimal potential for rehabilitation and lacked remorse, which are proper factors to consider in departing from the statutory minimum sentence. Therefore, the trial court did not abuse its discretion when it considered defendant's inconsistent remorse and crying during the presentence interview to support its departure from the statutory minimum sentence.

The trial court also held that defendant's minimal potential for rehabilitation was supported by the fact that defendant gave no insight into why he engaged in this egregious conduct and continued abusing the victims despite the fact that he knew it was very wrong. Defendant's failure to provide any reasoning for his actions concerned the trial court about whether rehabilitation would be possible. Defendant argues that he needs counseling and an assessment from a professional to discover why he behaved in this manner. The trial court did not, however, require defendant to diagnose himself. Rather, the trial court wanted defendant to provide some kind of reasoning for his actions that could allow the trial court to assess whether rehabilitation was possible.

However, whether this specific factor was permissible for the trial court to consider does not change that the other factors in this case led the trial court to conclude that a lengthier sentence was appropriate. The record supports the trial court's position that defendant requires a structured environment away from children. It is best for society and defendant alike. This conclusion was bolstered by the fact that defendant recorded these heinous acts, which allowed him to victimize these children over and over again. This Court has held that materials "produced by child pornographers permanently record the victim's abuse, and the continued existence of these images causes the child victims continuing harm by haunting the children in years to come." *People v Needham*, 299 Mich App 251, 256; 829 NW2d 329 (2013). Defendant argues that the fact that he recorded the acts was already contemplated by his other convictions; however, the act of recording and accessing this kind of material is nevertheless pertinent to defendant's potential for rehabilitation and for the protection of society. Although the trial court may not have been able to properly attribute a lengthier sentence on the basis of elements accounted for by defendant's concurrent convictions, the trial court's consideration of defendant recording the acts as it pertains to rehabilitation was not an abuse of discretion.

Relatedly, defendant argues that the trial court impermissibly considered items seized from his house an indicator that he intended to continue abusing children. He asserts such a conclusion was speculative. This Court has held that "the need to protect other children by the sentence imposed is another factor not adequately considered by the guidelines" and may be legitimately considered by a trial court. *Armstrong*, 247 Mich App at 425. Further, a "trial court may base a sentencing departure on a defendant's future dangerousness if objective and verifiable facts support the court's conclusion . . . ." *Anderson*, 298 Mich App at 189. The trial court reasoned that the items seized from defendant's home indicated that "the abuse would've continued if he wasn't discovered." On this record, the trial court did not abuse its discretion when it considered defendant's minimal potential for rehabilitation and the great risk that he posed to children in the future in departing from the statutory minimum sentence.

### III. CONCLUSION

The trial court relied on permissible factors to support its upward departure from the sentencing guidelines and statutory minimum in imposing defendant's sentence. The sentence that the trial court imposed was proportionate to defendant and the seriousness of his criminal conduct.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Michelle M. Rick
/s/ Noah P. Hood