In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1673

United States of America,

Plaintiff-Appellee,

v.

John Shutic,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CR 26--James B. Zagel, Judge.

Argued October 31, 2001--Decided December 11, 2001

  Before Bauer, Coffey, and Diane P. Wood,
Circuit Judges.

  Coffey, Circuit Judge.  John Shutic was
charged with two counts of attempting to
persuade a person whom he believed to be
a minor to engage in sexual activity, 18
U.S.C. sec. 2422(b), two counts of
traveling across state lines with the
intent to engage in a sexual act with a
minor, 18 U.S.C. sec. 2243(a), and two
counts of knowingly transporting and
shipping child pornography in interstate
commerce by means of a computer, 18
U.S.C. sec. 2252A(a)(1), in a six-count
indictment. On August 24, 2000, Shutic
pleaded guilty to one count of
transporting child pornography and
admitted his guilt in a stipulation to
the other five counts of the indictment
referred to above, which were taken into
consideration at the time of sentencing
pursuant to U.S.S.G. sec. 1B1.2(c)./1
During sentencing proceedings, the
parties argued whether the two counts of
transporting child pornography could be
grouped for sentencing purposes. The
sentencing judge ruled that the counts
did not involve the same primary victim
and thus could not be grouped. As a
result of the judge's ruling, Shutic's
adjusted offense level was increased by
three levels. Shutic appeals, arguing
that the sentencing judge committed error
when he declined to group the two counts

of transporting child pornography for sentencing purposes. We affirm.

I.  Factual Background

On August 11, 1999, John Shutic used his personal computer to sign onto the internet using America Online (AOL) as his internet service provider. Shutic entered an AOL "chat room" named "MfBryLgF," an acronym for "Male for Barely Legal Female," where he began an online conversation with "Jessica." "Jessica's" subscriber profile described her as a 14 year-old Illinois girl, but "Jessica" was actually Postal Inspector Bob Williams. Shutic proceeded to ask "Jessica" questions of a sexual nature and later asked whether she would like to see photographs of people having sex, and she agreed. Shutic sent "Jessica" seven images of adults engaged in sexually explicit activity during the August 11 online conversation.

From August 12, 1999 to January 12, 2000, Shutic continued to engage in online correspondence with "Jessica," during which Shutic discussed plans to meet with her in order to engage in sexual intercourse. Over that course of time, Shutic sent email to "Jessica" containing approximately fifty-one sexually explicit images. On January 5, 2000, Shutic sent "Jessica" via email two images depicting minors engaging in sexually explicit conduct.

On January 6, 2000, Shutic flew from his home in Cleveland, Ohio, to Chicago, Illinois, with the intent to engage in sexual acts with "Jessica." Upon seeing numerous marked police cars at the proposed rendevous point, Shutic returned to Cleveland. On January 12, 2000, Shutic drove from his Ohio home to Forest Park, Illinois, again with the intent to engage in sexual acts with "Jessica." The defendant brought a laptop computer with him, which he knew to contain approximately twenty-one images of child pornography, which were different than the images Shutic had sent to "Jessica" on January 5. Shutic arranged to meet "Jessica" at a Forest Park McDonald's restaurant at 3:30 p.m. When the defendant arrived at the McDonald's and began to approach a person he believed to be "Jessica," postal inspectors arrested him.

Prior to his January 12, 2000 arrest, Shutic had also begun a similar online conversation on AOL with "Tina," whose online profile identified her as a 13 year-old Illinois girl. "Tina" was again Postal Inspector Williams. Between November 2, 1999 and January 12, 2000, Shutic had numerous online conversations with "Tina," similar to those he had with "Jessica," including discussions of proposed sexual activity. Shutic had arranged to meet "Tina" on January 15, but Shutic was unable to meet "Tina" because he had been arrested three days earlier when he attempted to meet with "Jessica" on January 12.

On August 24, 2000, Shutic pleaded guilty to one count of transporting child pornography, in connection with the January 5, 2000, email he sent to "Jessica." In the plea agreement, Shutic also stipulated to facts that established his guilt to the five other offenses charged in the indictment. Because of Shutic's stipulation, his plea agreement thus was treated for sentencing purposes as if he had been convicted of the additional counts as charged, pursuant to U.S.S.G. sec. 1B1.2(c). Because the child pornography contained in the January 5, 2000, email (which formed the basis for count three) depicted different minors than the child pornography found on Shutic's laptop computer on January 12, 2000 (which formed the basis for count six), the government recommended that the sentencing judge not group counts three and six, which would result in a three-level increase in the most serious offense level pursuant to U.S.S.G. sec. 3D1.4. The judge agreed and calculated Shutic's adjusted offense level to be 21, which resulted in a guidelines imposed sentencing range of 37 to 46 months. The judge sentenced Shutic to a term of imprisonment of 39 months.

II. Issue

The only issue Shutic raises on appeal is whether the sentencing court erred in declining to group counts three and six for sentencing purposes under U.S.S.G. sec. 3D1.2.

III. Analysis

United States Sentencing Guideline sec.

3D1.2 provides, in relevant part:

All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:

. . . (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

Application Note 2 of the Commentary to sec. 3D1.2 provides that:

[t]he term 'victim' is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim. For offenses in which there are no identifiable victims (e.g., drug or immigration offenses, where society at large is the victim), the "victim" for purposes of subsections (a) and (b) is the societal interest that is harmed. In such cases, the counts are grouped together when the societal interests that are harmed are closely related . . . .

Shutic argues that the primary victim in a violation of sec. 2252A(a)(1) is society, and thus the sentencing court erred when it declined to group counts three and six of the indictment. Shutic urges us to adopt the holding of the Fourth Circuit in United States v. Toler, 901 F.2d 399, 403 (4th Cir. 1990), which concluded that society in general was the primary victim of sec. 2252A(a)(1) and the minors depicted in the child pornography were secondary victims. Under the Fourth Circuit's holding that society was the primary victim of sec. 2252A(a)(1), defendants would be entitled to have multiple counts of child pornography grouped under U.S.S.G. sec. 3D1.2 because the counts would involve the same primary victim, society.

We need not spend much time discussing Shutic's argument because we recently addressed precisely the issue he raises. United States v. Sherman, No. 00-2961, 2001 WL 1205378 (7th Cir. Oct. 11, 2001). In Sherman we considered the same arguments as Shutic raises and held that

"because the children depicted in the pornography suffer a direct and primary emotional harm when another person possesses receives or distributes the material . . . these counts should not be grouped under sec. 3D1.2." Sherman, 2001 WL 1205378, *8. In so holding, we recognized that the victim in child pornography is the child in the image, who suffers a direct harm through the invasion of his or her privacy. Id.

We agree with the holding in Sherman that the primary victims in child pornography are the children depicted. In Sherman, we considered and rejected the contrary reasoning of Toler. Sherman, 2001 WL 1205378. In so doing, we noted that the "possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy." Sherman, 2001 WL 1205378, at *7. We observed that "[c]hildren . . . suffer profound emotional repercussions from a fear of exposure, and the tension of keeping the abuse a secret." Id. (citing New York v. Ferber, 458 U.S. 747, 759 n. 10 (1982) (citing Schoettle, Child Exploitation: A Study of Child Pornography, 19 J. Am. Acad. Child Psychiatry 289, 296 (1980))). We have also observed that "[c]oncern for the welfare of the children who are used to create pornography is part of the public concern over child pornography . . . ." United States v. Richardson, 238 F.3d 837, 839 (7th Cir. 2001). Finally, we note again, as we did in Sherman, that six out of seven of our sister circuits have reached the issue and have similarly concluded that the children depicted in child pornography are the primary victims of the crime. See United States v. Tillmon, 195 F.3d 640, 644 (11th Cir. 1999); United States v. Norris, 159 F.3d 926, 929 (5th Cir. 1998), cert. denied, 526 U.S. 1010 (1999); United States v. Hibbler, 159 F.3d 233, 236-37 (6th Cir. 1998), cert. denied, 526 U.S. 1030 (1999); United States v. Boos, 127 F.3d 1207, 1211 (9th Cir. 1997), cert. denied, 522 U.S. 1066 (1998); United States v. Ketcham, 80 F.3d 789, 793 (3d Cir. 1996); United States v. Rugh, 968 F.2d 750, 755 (8th Cir. 1992); but see Toler, 901 F.2d at 403.

Overturning circuit precedent requires compelling reasons. United States v.

Walton, 255 F.3d 437, 443 (7th Cir. 2001). Shutic has failed to provide any. We are convinced that our reasoning in Sherman is proper and we decline Shutic's invitation to revisit that precedent.

IV.  Conclusion

   Shutic does not contest the government's claim that different children were depicted in the materials involved in the two counts of transporting child pornography. Thus, the sentencing judge's action in declining to group the counts for sentencing purposes under sec. 3D1.2 was proper as each count had a different primary victim. We decline to revisit the precedent we set forth in Sherman and thus we AFFIRM Shutic's conviction and sentence.

FOOTNOTE

/1 U.S.S.G. sec. 1B1.2(c) provides that "[a] plea agreement . . . containing a stipulation that specifically establishes the commission of addi-tional offenses shall be treated as if the defen-dant had been convicted of additional counts charging those offenses. Consequently for sen-tencing purposes, Shutic's plea was treated as if he had been convicted of all six counts charged in the indictment.