PEOPLE v NEEDHAM

Docket No. 309491. Submitted January 8, 2013, at Grand Rapids. Decided
January 15, 2013, at 9:05 a.m.

Robbie C. Needham pleaded no contest in the Kent Circuit Court,
James R. Redford, J., to a charge of possessing child sexually abusive
material, MCL 750.145c(4). At sentencing, the court assessed 10
points under offense variable (OV) 10, MCL 777.40, for defendant's
having exploited a victim's youth and sentenced defendant to one to
four years' imprisonment. Defendant appealed his sentence.

The Court of Appeals *held*:

Evidence that defendant possessed child sexually abusive ma-
terial supported a score of 10 points for OV 10 despite the fact that
he had no contact with the children depicted in the images. Under
MCL 777.40(1)(b), 10 points are to be assessed if the offender
exploited a victim's physical disability, mental disability, or youth
or agedness or a domestic relationship or if the offender abused his
or her authority status. MCL 777(3)(b) defines "exploit" as to
manipulate a victim for selfish or unethical purposes. A person
who possesses child sexually abusive material has personally
engaged in the systematic exploitation of the vulnerable victim
depicted in that material by acting on a selfish and unethical desire
to possess material that a child had to be manipulated to appear in
for the material to be produced. Direct or physical contact between
the offender and the victim is not required.

Affirmed.

SENTENCES — SENTENCING GUIDELINES — OFFENSE VARIABLE 10 — EXPLOITATION
OF VULNERABLE VICTIMS — POSSESSION OF CHILD SEXUALLY ABUSIVE
MATERIAL.

Ten points may be assessed under offense variable 10 of the sentencing
guidelines if the offender exploited a victim's physical disability,
mental disability, or youth or agedness or a domestic relationship or
if the offender abused his or her authority status; evidence of
possession of child sexually abusive material supports a scoring of 10
points for offense variable 10 even if the offender had no direct or
physical contact with the children depicted in the images (MCL
777.40[1][b]).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, *Timothy K. McMorrow*, Chief Appellate Attorney, and *T. Lynn Hopkins*, Assistant Prosecuting Attorney, for the people.

*Kevin A. Landau* for defendant.

Before: GLEICHER, P.J., and O'CONNELL and MURRAY, JJ.

GLEICHER, P.J. Defendant, Robbie Christopher Needham, pleaded no contest to possession of child sexually abusive material in violation of MCL 750.145c(4). Defendant challenges his one-to-four-year prison sentence, claiming that the circuit court should have assessed zero points for offense variable (OV) 10 (exploitation of a vulnerable victim) because he had no contact with the children depicted in the pornographic images. When a person possesses child sexually abusive material, he or she personally engages in the systematic exploitation of the vulnerable victim depicted in that material. Evidence of possession therefore can support a score of 10 points for OV 10, reflecting that a defendant exploited a victim's vulnerability due to the victim's youth. We affirm.

MCL 777.40 provides for the scoring of OV 10 as follows:

> (1) [OV] 10 is exploitation of a vulnerable victim. Score [OV] 10 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) Predatory conduct was involved .............. 15 points
>
> (b) The offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status ........................................................ 10 points

(c) The offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious ............................................................ 5 points

(d) The offender did not exploit a victim's vulnerability ...................................................................... 0 points

(2) The mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability.

(3) As used in this section:

\* \* \*

(b) "Exploit" means to manipulate a victim for selfish or unethical purposes.

(c) "Vulnerability" means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation.

Defendant preserved his challenge to the scoring of OV 10 by objecting at sentencing. MCL 769.34(10); *People v Kimble*, 470 Mich 305, 310; 684 NW2d 669 (2004). Defendant argued that scoring the variable was improper because he never had contact with the victims of his crime and therefore he could not have exploited them. The prosecutor challenged that "young, real people" were depicted in the photographs and those individuals were exploited due to their vulnerability. The circuit court agreed with the prosecutor, stating:

First, the offense to which the defendant has been convicted of through the plea process is the possession of child pornographic materials. We then have to drill down, in the Court's estimation, to determine what is this thing that he has been convicted of possessing? Child pornography is, of its very nature, the exploitation of children, because of their status as a child and the objectification of the child as a sexual object by those who, for whatever

reason, gain sexual pleasure through the viewing or pos-
session of these sexually explicit images.

The question then becomes is this, then, the victimiza-
tion of the victim by the possession of this physical mani-
festation of their person in a sexually explicit position? The
Court concludes that it is a continuing victimization of the
person, and it is an exploitation of the victim's vulnerabil-
ity, and were it not for the vulnerability, that is, the age of
the child who is being exposed sexually and whose body is
being exploited, the image of the body being exploited,
there would be no offense, period. Because if it were, in
fact, an adult engaged in some type of pornographic activ-
ity, while reprehensible or not understandable by some or
most people, it is not necessarily criminally proscribed.
What is criminally proscribed is that of a child.

In this case, the defendant has pled guilty to possession
of the child sexually explicit material. The Court is satisfied
that each time this possession takes place by each new
possessor of this pornographic and exploitive material,
those who possess it are, in fact, exploiting the vulnerabil-
ity of the person whose image was first taken, and for that
reason the Court is satisfied, when we look to factor 4 [sic:
3] of the analysis undertaken by [*People v Cannon*, 481
Mich 152, 158; 749 NW2d 257 (2008)], whether the victim
was particularly young or old, this speaks to the Court of
the appropriateness of scoring this position.

We review the circuit court's scoring decision for an
abuse of discretion and to determine " 'whether the
record evidence adequately supports a particular
score.' " *People v Phelps*, 288 Mich App 123, 135; 791
NW2d 732 (2010) (citation omitted). The circuit court's
decision must be supported by a preponderance of the
evidence. *People v Osantowski*, 481 Mich 103, 111; 748
NW2d 799 (2008). We must uphold a scoring decision
" 'for which there is *any* evidence in support . . . .' "
*Phelps*, 288 Mich App at 135 (emphasis added; citation
omitted). However, "[t]he proper interpretation and
application of the legislative sentencing guidelines are

questions of law, which this Court reviews de novo." *Cannon*, 481 Mich at 156. The primary goal of statutory interpretation is " 'to ascertain and give effect to the intent of the Legislature.' " *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008) (citation omitted). Where the statutory language is plain and unambiguous, we must apply it as written and may not engage in judicial construction. *Id.*

The text of OV 10 permits a score of 10 points when "[t]he offender exploited a victim's . . . youth or agedness[.]" MCL 777.40(1)(b). MCL 777.40(1)(c) defines "vulnerability" as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation," and MCL 777.40(3)(b) defines "exploit" as "to manipulate a victim for selfish or unethical purposes." Accordingly, to merit a score of 10 points for OV 10, a defendant must have manipulated a young victim for a selfish or unethical purpose and the victim's vulnerability must have been readily apparent.

There was clearly a victim in this case. A "victim" is "a 'person harmed by a crime, tort, or other wrong' . . . or . . . a person who 'is acted on and usually adversely affected by a force or agent . . . .' " *People v Althoff*, 280 Mich App 524, 536-537; 760 NW2d 764 (2008) (citations omitted). The victim of crimes involving child sexually abusive activity, including the possession of child sexually abusive material is the child victim portrayed in the material. *Id.* at 537-539. No one challenges that the vulnerability of the young children appearing in the materials possessed by defendant was readily apparent.

Contrary to defendant's arguments, however, *he did exploit and manipulate* the young, vulnerable victims depicted in the materials he possessed. Nothing in the plain language of MCL 777.40 suggests that an offender must have direct or physical contact with the victim to

exploit or manipulate him or her. The very purpose of MCL 750.145c is to "protect[] children from sexual *exploitation* . . . ." *People v Ward*, 206 Mich App 38, 42; 520 NW2d 363 (1994) (emphasis added). As did the defendant in *United States v Norris*, 159 F3d 926, 929 (CA 5, 1998), the current defendant "takes an unrealistically narrow view of the scope of harms experienced by the child victims of the child pornography industry." "Unfortunately, the 'victimization' of the children involved does not end when the pornographer's camera is put away. The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions . . . ." *Id.*

*Norris* describes three ways in which the possessor of child sexually abusive material victimizes the child depicted. First, "the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials," and a person who takes possession of an image "directly contributes to this continuing victimization." *Id.* at 929-930. "[T]he use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *New York v Ferber*, 458 US 747, 758; 102 S Ct 3348; 73 L Ed 2d 1113 (1982). "[T]he materials produced by child pornographers permanently record the victim's abuse," and the "continued existence" of these images "causes the child victims continuing harm by haunting the children in years to come." *Osborne v Ohio*, 495 US 103, 111; 110 S Ct 1691; 109 L Ed 2d 98 (1990), citing *Ferber*, 458 US at 759.

Second, "the mere existence of child pornography represents an invasion of the privacy of the child depicted," and the recipient of the sexually abusive image "perpetuates the existence of the images re-

ceived, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children." *Norris*, 159 F3d at 930. The child victim will forever "suffer profound emotional repercussions from a fear of exposure . . . ." *United States v Shutic*, 274 F3d 1123, 1126 (CA 7, 2001) (quotation marks and citation omitted).

Third, "the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials." *Norris*, 159 F3d at 930. As noted in *Norris*:

> "[T]he existence of and traffic in child pornographic images . . .
>
> ". . . inflames the desires of child molesters, pedophiles, and child pornographers, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials[.]"
>
> . . . The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects. [*Id.* (citation omitted).]

Ultimately, "the victimization of a child depicted in pornographic materials flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography." *Id.*

Defendant acted on his "selfish" and "unethical" desire to possess child sexually abusive material for his own sexual gratification. MCL 777.40(3)(b). To achieve that purpose, a child had to be manipulated to pose for the sexually abusive photographs. As noted by extensive federal caselaw on the topic of child pornography, child

sexually abusive material would not exist but for the selfish and unethical purposes of defendant and other end users.[1] And every time the image is viewed, the child victim is exploited anew.[2] Therefore, the circuit court correctly assigned points for OV 10 despite that defendant did not have contact with his young victims.

Defendant incorrectly interprets Michigan caselaw analyzing and applying OV 10 as requiring direct or physical contact between the offender and the victim. Contrary to defendant's assertion, nothing in *Cannon* requires the offender to have first-hand contact to exploit a victim. Rather, *Cannon* provides that every subdivision of MCL 777.40(1) requires that the offender have somehow exploited a vulnerable victim, including the assignment of points for "predatory conduct" in subdivision (a). *Cannon*, 481 Mich at 157-159.

In *People v Russell (On Remand)*, 281 Mich App 610, 615; 760 NW2d 841 (2008), this Court concluded that the circuit court could not score OV 10 when the offender has no "victim." In *Russell*, the defendant had communicated on the Internet with an undercover police officer posing as a 14-year-old girl. *Id.* at 612. This Court held that the defendant's subjective intent is irrelevant under OV 10 "if no vulnerable victim was in fact placed in jeopardy or exploited by an offender's actions . . . ." *Id.* at 615. There were several real victims in this case, however: the multiple young children depicted in the child sexually abusive material in defendant's possession.

---

[1] See *United States v Sherman*, 268 F3d 539, 543-544 (CA 7, 2001); *United States v Tillmon*, 195 F3d 640, 644 (CA 11, 1999); *Norris*, 159 F3d at 930; *United States v Boos*, 127 F3d 1207, 1210 (CA 9, 1997); *United States v Ketcham*, 80 F3d 789, 793 (CA 3, 1996).

[2] See *Osborne*, 495 US at 111; *Ferber*, 458 US at 759; *Shutic*, 274 F3d at 1126; *Sherman*, 268 F3d at 544; *Norris*, 159 F3d at 929-930.

*People v Huston*, 489 Mich 451, 459; 802 NW2d 261 (2011), interpreted the predatory-conduct provision of MCL 777.40(1)(a) as requiring "a" victim rather than "the" "one particular or specific victim . . . ." MCL 777.40(1)(b) refers to "a" victim rather than "the" victim as well. However, *Huston* is not dispositive of the issue in this case. The defendant in *Huston* naturally had contact with his victim; he had lain in wait to rob her. *Huston*, 489 Mich at 455. Yet *Huston* in no way dictates that a defendant must have contact with a victim to exploit him or her. Similarly, the defendant in *Phelps*, 288 Mich App at 136, had physical contact with his victim because he had sexually assaulted her. Again, nothing in *Phelps* demands direct contact to "exploit" a victim for purposes of the sentencing guidelines.

Rather, this case is more akin to *Althoff*, 280 Mich App at 529-530, in which this Court considered whether the possession of child sexually abusive material could be considered a crime "that by its nature constitutes a sexual offense against" a minor for purposes of the catchall provision of the Sex Offenders Registration Act (SORA), MCL 28.722(s)(*vi*).[3] The defendant in *Althoff* also had no contact with the children depicted in the sexually explicit material he possessed. *Althoff*, 280 Mich App at 526-527. Despite the lack of contact between the offender and the victim, *Althoff* noted that the Legislature recognized that the possession of child pornography is a sexual offense worthy of requiring a defendant's registration as a sexual offender upon conviction. *Althoff*, 280 Mich App at 537, citing MCL 28.722(e)(*i*) (now MCL 28.722[s][*i*]). On this basis, *Althoff* held that the defendant had committed a sexual offense against the minors portrayed in the porno-

---

[3] At the time *Althoff* was decided, the relevant provision of SORA was located at MCL 28.722(e)(*xi*).

graphic images, thereby mandating his registration as a sexual offender under the statute's catchall provision. Specifically, this Court held that to commit a sexual offense against an individual is synonymous with the offender's making the individual a victim. *Althoff*, 280 Mich App at 537-540. Citing the same plethora of federal cases relied on in this opinion, *Althoff* concluded that the defendant, through his possession of child sexually abusive materials, made the children depicted the victims of his sexual offense. *Id.* at 538-540.

The same is true in this case. By possessing sexually abusive images of children, defendant made those children the victims of his sexual offense and exploited them for his sexual gratification. Just as this conduct requires registration as a sexual offender under SORA, it mandates the scoring of OV 10 for the exploitation of the vulnerable young victims.

Affirmed.

O'CONNELL and MURRAY, JJ., concurred with GLEICHER, P.J.