*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EDWARD JAMES CHARBONEAU,

        Defendant-Appellant.

FOR PUBLICATION
November 15, 2024
10:54 AM

No. 364596
Marquette Circuit Court
LC No. 2019-058611-FH

Before: BORRELLO, P.J., and N. P. HOOD and YOUNG, JJ.

YOUNG, J.

Defendant, Edward James Charboneau, appeals as of right his sentences of 10 to 20 years' imprisonment for 32 counts of Child Sexually Abusive Activity, MCL 750.145c(2), 32 corresponding counts of Using a Computer to Commit a Crime, MCL 752.797(3)(f), 2 counts of Child Sexually Abusive Material (CSAM) – Aggravated Possession, MCL 750.145c(4), and 2 corresponding counts of Using a Computer to Commit a Crime, MCL 752.797(3)(e). Charboneau appeals these sentences by right under MCR 7.203(A)(1), arguing that his constitutional right to a fair trial was violated when the trial court did not allow defense counsel to present certain demonstrative evidence at trial. Charboneau also contends the trial court incorrectly assessed 10 points for offense variable (OV) 4 because there was no victim testimony regarding psychological injury or a prospect of such injury suffered. Though we hold there was no violation of Charboneau's constitutional rights, we agree that the trial court erred in assessing 10 points for OV 4 at sentencing. We affirm Charboneau's convictions and sentences but remand this matter for the ministerial task of correcting the presentence investigation report (PSIR) in the lower court file.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out the search and seizure of Charboneau's two computers (one desktop and one laptop) on May 29, 2019, which were alleged to contain Child Sexual Abusive Material ("CSAM"). Detective Lieutenant Christopher Aldrich of the Marquette City Police Department conducted the search warrant and was called to testify as the prosecution's first witness at trial.

Following seizure of the two computers,[1] Detective Aldrich testified that they were brought to the Michigan State Police Computer Crimes Unit in Marquette for analysis. Following this analysis, Detective Aldrich recovered multiple images that he considered to be CSAM from the desktop computer and two videos of suspected CSAM on the laptop computer. In addition to these images, the forensic analysis of the computers also found web addresses identified as pornography websites. In total, 35 images and 2 videos of suspected CSAM were found among the two devices.

On cross-examination, Detective Aldrich was asked about some of the flagged search terms. Defense counsel began with the YouTube search for "young girl pole dancing." Defense counsel asked Detective Aldrich if he was aware that one minute later, there was another search for "UK's latest fitness craze, little girls pole dancing." Detective Aldrich answered that he was not aware of the subsequent search. Additionally, Detective Aldrich testified that he was not aware that, in addition to the search term "teen prostitute," there was also a search on YouTube for "Morning Joe, MSNBC" and that one of the stories that morning on the show had focused on "teen prostitutes." Defense counsel also questioned Detective Aldrich regarding the search term "teen with new lingerie groped POV" on the website Pornhub. Defense counsel asked Detective Aldrich if he were to enter the search term "teen with new, new lingerie groped POV" into Pornhub, whether it would return results containing CSAM or legal adult pornography; Detective Aldrich responded that he did not know.

At this point, defense counsel sought to display the Pornhub website to the jury and conduct a search for "teen with new, new lingerie groped POV" to determine what results the search would return. It was defense counsel's belief that the search results would show "absolutely nothing teen related or CSAM related." The prosecutor responded that he was aware there are pornography websites that display individuals ages eighteen or older who pose, dress, and appear as an underage so that those who are interested in viewing such content can do it legally, as models are of legal age. However, the prosecutor argued that a search conducted on the current date, in September 2019, would not replicate a search conducted in 2018, and that the point defense counsel was trying to make could be done without having a jury view pornographic images. The trial court agreed with the prosecutor and barred defense counsel from performing the requested searches before the jury on the basis that the demonstration was not relevant, and was more prejudicial than probative. Immediately following that ruling, the trial judge asked the parties if there was "anything further we need to address in that regard?" Defense counsel responded, "no judge," and continued with cross-examination.

The prosecutor called several more witnesses, including Dr. Francis Darr, a qualified expert in child abuse, neglect, and pediatrics. Dr. Darr reviewed the images and videos at issue and

---

[1] One computer was described as a Hewlett Packard All-In-One desktop computer (labeled "Item One" for investigative purposes) and the other computer was a Hewlett Packard laptop (labeled "Item Two" for investigative purposes). Detective Aldrich testified that, at the time the search warrant was executed, there was a cord running between the desktop computer and the laptop computer. In this appeal, Charboneau does not challenge the legality of law enforcement's search or seizure of either computer.

opined that the overwhelming majority of the individuals in each photograph were children and adolescents under the age of eighteen, constituting CSAM. The prosecution also called Charboneau's neighbor, Michael Perry, to the stand. Perry testified that he gave an old computer to Charboneau that his mother was planning to throw away, and that he had never personally turned on or used the computer himself.

Charboneau's 15-year-old son, Gabriel Charboneau,[2] was also called to testify. Gabriel testified that he would sometimes use Charboneau's computers, but that he did not have the sign-in information to access them by himself. When asked if he had ever seen anything "inappropriate" in the apartment, Gabriel recalled a time that he saw a pornography website already pulled up by someone else on Charboneau's computer when he was ten or eleven years old, but that he never personally searched for porn on either of Charboneau's computers.

The prosecution's next witness was Jeffrey Martin, a digital forensic examiner, formerly employed with the Michigan State Police, who testified that he was called by the Marquette Police Department to consult on a potential CSAM case.[3] In his forensic analysis, Martin determined that two images were taken from a web search, while the other potential CSAM images found on the computer had been downloaded and/or transferred there at one point in time. All of the images, he explained, however, were found on unallocated space within the computer, meaning they had been deleted by the user and were waiting for the next item to be deleted to take over the space they currently occupied on the computers' hard drives. Martin further testified that the suspicious web searches were able to be tied to a specific log in user ID. On Item 1 (the desktop computer), the activity was tied to the username "E. Charboneau." On Item 2 (the laptop), the user activity was tied to the "Gaby Baby" username.[4] Both devices also contained autofill information that tied the user activity to Charboneau. Martin further testified that folders created by the E. Charboneau user account were discovered on the devices with titles commonly used in naming CSAM. Specifically, Martin discovered folders accessed and created by the E. Charboneau user account between March 2019 and April 2019 entitled "eight year-old," "six year-old," "six year-old daughter," "horny brother and sister," "eight year-old daughter," and "petite six year-old."

On cross-examination, Martin was shown the thirty-five separate images and two videos found in the unallocated space of the computers and opined that each was suspected CSAM. Martin testified that he had no way of knowing who put them on the computer or when they were put there, but he could only decipher which username was used to store the images and videos. Martin further admitted that it did not appear that Charboneau had ever initiated any updates to the operating system of the desktop or laptop computer, which would make it possible that files in the "unallocated space" portion of the hard drive could have been there prior to Charboneau obtaining the desktop computer where all of the images were located. The same is true of the laptop

---

[2] Because Gabriel shares the same last name as his father, we refer to Gabriel by his first name.

[3] Martin was qualified as an expert in digital forensic analysis and was deemed a certified computer examiner.

[4] Martin testified that the last log in for Gaby Baby, the username associated with Gabriel, was in 2014. He also testified that he found no evidence that Gabriel used the computer described as Item 1.

computer, which had not been updated since 2016. Additionally, Martin acknowledged that CSAM is typically shared on peer-to-peer networks, and that he found no peer-to-peer software transferring files on either device.

On the third and final day of trial, defense counsel called Joshua Blanchard, an expert in computer forensics, as its first witness. Blanchard agreed with Martin that all of the CSAM images were found in the unallocated space on the computers, and thus, the images would be inaccessible to a user. Blanchard testified that he saw no evidence that Charboneau interacted with or viewed the CSAM images in any way, nor was there any evidence on the computers that he copied, purchased, created, or distributed any of the images found on his computer.

Counsel then questioned Blanchard on the concerning search terms that were used on the internet, to which Blanchard testified:

> *Q*. And was there anything in your analysis that led you to believe that those were anything other than– let me ask it better. What did those, what did those – your discovery of those search terms lead you?

> *A*. I believe that they were search terms on – that were connected with commercial pornography websites that have adult pornography and would yield adult pornography.

> *Q*. So you – what was it? Pornhub.com and motherless.com. Those were porn sites, correct?

> *A*. So Porn Hub is a, a pornography website that has adult pornography on it. And motherless.com is a web – it's different. It's less commercial. It was started by a person named Joshua Lange. And it's a website where people can upload, sort of their own amateur pornography. Their terms of service prohibit uploading child pornography. And so it's a place that people go and they enter search terms and they get, you know, sort of self-created pornography.

> *Q*. Search terms like teen and girls, and jail bait ass. Is that true?

> *A*. Yeah, so those are search terms that come up frequently in the cases I work on that involved child pornography. Teen is a search term that frankly yields on adult porn sites, you know, eighteen, nineteen year old people. And anyone, really who wants to claim to be that age.

On cross-examination, the prosecutor asked Blanchard if he was aware that the search term "teen with new lingerie groped" was conducted under the E. Charboneau user name. Blanchard responded that he did see that it occurred while the user account E. Charboneau was logged in. The prosecutor continued:

> *Q*. And the other terms such as jail bait that were attributed to that user name of E. Charboneau. Again the same answer would apply

-4-

*A*. So again I, I saw that. That's not a search term that in my experience is associated with child pornography. I understand it's sort of a crude term for someone young. But the search terms that I find in cases that are associated with child pornography are different than that. Those are search terms that would – on an adult website like Porn Hub or motherless would yield legal adult pornography.

\* \* \*

*Q*. I mean you can't – I'm sorry. I'll follow up and then I'll shut up and let you answer. So you can't really know what that user or that person doing that search is actually looking for or not, is that, that correct? And feel free to answer.

*A*. So I think there are a couple parts to that question right. The first part is that people – you said purveyors, but people that are looking for this stuff, right, rather than people that are distributing it. The people that are looking for it in my experience know where to look because there are often communities of people that are interested in child pornography. They talk on chat groups. Some dark web pages. They exchange on BitTorrent. They know where to go and they know what search terms get them what they want. And so, no I think that people that want this stuff do know where to go to get it. I think the search term that you got to be careful about – you say teen in lingerie. Teen in lingerie captures young adult women, right. It captures eighteen and nineteen year olds.

*Q*. Yes it does. Yep.

*A*. And if you put that into a commercial site like Porn Hub my expectation is that you would get back women in their twenties who are pretending like their teens. Dressed kind of youngish. And we can debate whether or not that's something someone should do. But it is, it is unquestionable [sic] legal to search for adult pornography in the United States.

In further questioning regarding Pornhub and motherless.com, Blanchard testified that these adult porn sites provide legal search results to its users and do not generate illegal search results.

The defense rested and the prosecutor called Martin to the stand as a rebuttal witness. Martin testified that contrary to Blanchard's testimony, search terms like "young little girl" and "teen jail bait" came up in his CSAM investigations. He further indicated that in about fifty percent of his cases investigating CSAM the illegal materials are in allocated space, which was also contrary to Blanchard's testimony.

The jury found Charboneau guilty on 32 counts of child sexually abusive activity, 32 corresponding counts of using a computer to commit a crime, 2 counts of aggravated possession

of CSAM, and 2 corresponding counts of using a computer to commit a crime.[5] Charboneau was sentenced on December 15, 2022, to 10 years to 20 years' incarceration with the Michigan Department of Corrections on the child sexually abusive activity and corresponding use of a computer to commit a crime counts, with the sentences to run concurrently. This appeal followed.

## II. ANALYSIS

## A. CHARBONEAU'S RIGHT TO A FAIR TRIAL

In this appeal, Charboneau argues that the inability to present searches on the Pornhub website to the jury denied him the right to present a defense and deprived him of his constitutional right to a fair trial. We disagree.

## 1. STANDARD OF REVIEW

We review the trial court's exclusion of evidence for an abuse of discretion. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). A trial court's decision whether to admit or exclude evidence will be affirmed in the absence of a clear abuse of discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). The trial court abuses its discretion when its decision is outside the range of principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010).

As for unpreserved constitutional claims,[6] we review for plain error affecting substantial rights. *King*, 297 Mich App at 472. This requires the defendant to show that the plain error affected his substantial rights. *Id.* at 473, citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only if the error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*.

## 2. THE TRIAL COURT DID NOT COMMIT PLAIN ERROR IN DECIDING TO EXCLUDE THE EVIDENCE

The right to present a complete and meaningful defense arises from the Sixth Amendment's Confrontation Clause and the Due Process Clause of the Fourteenth Amendment. US Const, Ams V, XIV; *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012). A defendant also has the

---

[5] The jury acquitted Charboneau on three counts of Child Sexually Abusive Activity, MCL 750.145c(2) and three corresponding counts of Using a Computer to Commit a Crime, MCL 752.797(3)(f).

[6] At trial, Charboneau never claimed that his constitutional right to present a defense was being denied by the trial court's ruling. Charboneau's only objection to the ruling of the trial court was based on the Michigan Rules of Evidence, with no mention of a constitutional violation occurring. Thus, the evidentiary issue is preserved, but the constitutional issue is not preserved. *People v Gaines*, 306 Mich App 289, 306; 856 NW2d 222 (2014).

right to present a defense under the Michigan Constitution. Const 1963, art 1, § 17. *People v Carpenter*, 464 Mich 223, 241-242; 627 NW2d 276 (2001). However, "[t]he right to assert a defense may permissibly be limited by 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " *People v Toma*, 462 Mich 281, 294; 613 NW2d 694 (2000), citing *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). A trial court might be justified in excluding evidence that is "incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *United States v Blackwell*, 459 F3d 739, 753 (CA 6, 2006), or evidence that is "repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Holmes v South Carolina*, 547 US 319, 326–327; 126 S Ct 1727, 164 L Ed 2d 503 (2006).

Here, defense counsel sought to conduct the searches on the website Pornhub for the purpose of showing the jury that, when searching the terms at issue, no teen related or CSAM results would be returned. At trial, the prosecution objected to defense counsel's introduction of the demonstrative evidence, stating that it is not relevant and that it would be more prejudicial than probative. Defense counsel now argues for the first time that the trial court violated Charboneau's constitutional rights in excluding the evidence. We disagree.

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without such evidence. MRE 401. And, although relevant, evidence may still be excluded. Relevant evidence should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or the potential for misleading the jury. *People v Brownridge*, 459 Mich 456, 461 (1999). See also MRE 403. As argued by the prosecution, conducting a search on the Pornhub website several years after the original search was done is not relevant. And even if it were relevant, we agree with the trial judge in finding such a demonstration would be more prejudicial than probative. There would be no way to ensure that the search results presented to the jury would match the results that Charboneau would have accessed years prior to trial – leading to potential confusion and misleading of the jury. Further, as the ages of the individuals featured here were only proven with expert testimony, the search results alone would be insufficient to establish that the individuals were over the age of eighteen.

Moreover, the point that defense counsel sought to assert with the use of the Pornhub website was accomplished through the testimony of several witnesses, including two prosecution witnesses. Defense counsel argued that he was not requesting the demonstration to "show that the exact same videos or photos are available now as would have been at the same time. [He was] doing it to show that a search algorithm on any particular website is gonna return a type of category of thing." This objective was achieved through the testimony of Detective Aldrich, Dr. Darr, Martin, and Blanchard collectively.

Detective Aldrich testified that he recalled there being images of adult pornography present on the Charboneaus' devices, as did Martin. Martin also testified that when the term "teen" is searched on a pornography website, that pornographic videos with the term "teen" in the name of the video would appear. Charboneau's own expert, Blanchard, testified that the search terms found on the Charboneaus' devices would return results for adult pornography, that he has never seen a CSAM case that involves the use of the Pornhub website, and that Pornhub and motherless are not websites that people go to when looking for CSAM. Blanchard also testified that those specific

search terms would yield results that would include 18-year-old or 19-year-old individuals. While defense counsel's demonstration could potentially have been helpful in conveying this point to the jury, it is mere speculation that such demonstration would have bolstered Charboneau's defense. The trial court's ruling on this issue resulted from the proper application of Michigan's evidentiary rules and was not an abuse of discretion. Nor did the ruling manifest plain error affecting Charboneau's substantial rights.

Under these circumstances, we hold that trial court's decision to exclude the demonstrative evidence was not an abuse of discretion nor plain error.

## B. OV 4

Charboneau argues that the trial court erred in assessing 10 points for OV 4 because the record lacks victim testimony regarding psychological injury or a prospect of such injury suffered by said victim. We agree.

### 1. STANDARD OF REVIEW

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded by statute on other grounds as stated by *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019). "[T]he clear-error standard requires us to affirm unless we are definitely and firmly convinced the trial court made a mistake . . . ." *People v Ziegler*, 343 Mich App 406, 410; 997 NW2d 493 (2022). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

This Court reviews for clear error a trial court's findings in support of a particular score under the sentencing guidelines, but we review de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A trial court's finding is clearly erroneous when this Court is left with the definite and firm conviction that the trial court made a mistake. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The prosecution bears the burden to establish the facts in support of a score by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).

### 2. THE TRIAL COURT CLEARLY ERRED IN ASSESSING 10 POINTS TO OV 4

OV 4 evaluates psychological injury to a victim, and provides that 10 points shall be scored if a victim suffers serious psychological injury requiring professional treatment. MCL 777.34(l)(a). The fact that treatment has not been sought is not conclusive. MCL 777.34(2). As previously explained by this Court, the possession or dissemination of CSAM is a crime that has a victim. *People v Needham*, 299 Mich App 251, 255; 829 NW2d 329 (2013). This Court also noted that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child. *Id.* at 256, citing *New York v Ferber*, 458 US 747,758; 102 S Ct 3348; 73 L. Ed. 2d 1113 (1982). In *Ferber*, the Supreme Court noted that,

[V]irtually all of the States and the United States have passed legislation proscribing the production of or otherwise combating "child pornography." The legislative judgment, as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child. That judgment, we think, easily passes muster under the First Amendment.

In this case, the trial scored OV 4 at 10 points. Under MCL 777.34, the trial court assigns 10 points to OV 4 if it found that a victim suffered serious psychological injury that required or may require professional treatment.

The prosecutor relies on *People v Roop*, unpublished per curiam opinion of the Court of Appeals, issued May 16, 2019 (Docket No. 342262), p 9-10. In that case, Roop was convicted of manufacturing CSAM, using a computer to commit a crime, distributing CSAM abusive material, and possessing CSAM. *Id.* at 1. Roop argued there was no evidence that the persons depicted in the materials actually suffered any psychological injury. *Id.* at 9-10. In his appeal, Roop claimed that the trial court must have relied on *People v Needham*, 299 Mich App 251; 829 NW2d 329 (2013) to score OV 4. *Roop*, unpub op at 9-10.

In *Needham*, this Court addressed whether a trial court could assign 10 points under OV 10 for the exploitation of a victim's youth for an offense involving CSAM, even though there was no evidence that the defendant had any contact with the child depicted. *Needham*, 299 Mich App at 252. We held that the victim in a case involving CSAM is the child depicted and that the end user of child pornography exploits the youthful victim by creating a market for child pornography and participates in the continued exploitation of the victim anew every time the image is viewed. *Id.* at 255-258. For those reasons, a defendant convicted of possessing CSAM, exploits the child victim by downloading and viewing the image even though he or she has never had contact with the victim. *Id.*

Applying *Needham* in *Roop*, this Court upheld the trial court, finding that Roop had not shown that the trial court erred when it assigned 10 points under OV 4. *Roop*, unpub op at 10. However, we find *Roop* distinguishable. In that case, unlike here, there was psychological harm reported by a 10-year-old victim. *Roop*, unpub op at 8. *Roop* relied on *Needham*, a decision from 2013, but we find instructive *People v White*, 501 Mich 160; 905 NW2d 228 (2017). In *White*, our Supreme Court reversed the trial court's assessment of 10 points to OV 4, concluding that "(a) points for OV 4 may not be assessed solely on the basis of a trial court's conclusion that a 'serious psychological injury' would normally occur as a result of the crime perpetrated against the victim and (b) evidence of fear while a crime is being committed, *by itself*, is insufficient to assess points for OV 4." *Id.* at 162. *White* explained,

[A] trial court "may not simply assume that someone in the victim's position would have suffered psychological harm because MCL 777.34 requires that serious psychological injury 'occurred to a victim,' " not that a reasonable person in that situation would have suffered a "serious psychological injury." [*Id.* at 163 citing *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012).]

Here, like in *White*, we have no victim impact statement at a preliminary examination or at sentencing to establish psychological injury. A "court cannot merely assume that a victim has suffered a 'serious psychological injury' solely because of the characteristics of the crime." *Id*. at 165. We thus conclude that the trial court clearly erred in scoring OV 4 at 10 points. However, because the trial court's sentencing error does not alter the imposed sentencing guidelines range, resentencing is not required.[7] We thus remand to the trial court only for the ministerial act of amending the PSIR to reflect 0 points for OV 4.

### III. CONCLUSION

We affirm the trial court's decision in denying Charboneau's request to present the disputed demonstrative evidence. However, because there was not a preponderance of the evidence to support serious psychological injury, the trial court clearly erred in assessing 10 points for OV 4. We affirm Charboneau's convictions and sentences but remand to the trial court for the ministerial act of amending the PSIR to reflect 0 points for OV 4.

Affirmed in part, remanded in part. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Stephen L. Borrello
/s/ Noah P. Hood

---

[7] Defense counsel urges this Court to remand for resentencing because he claims the sentence imposed was based on inaccurate information. We do not believe the information considered in sentencing Charboneau was inaccurate as used in MCL 769.34(10), but rather, that there is insufficient evidence of it. This Court has previously held that where a guideline variable score is at issue and does not change the guidelines, the remedy is ministerial in nature. See *People v Barnes*, 332 Mich App 494, 509; 957 NW2d 62 (2020).