*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 24, 2025
11:29 AM

Plaintiff-Appellee,

v

No. 368655
Saginaw Circuit Court
LC No. 22-050258-FH

L. C. LAMAR CLEMMONS,

Defendant-Appellant.

Before: HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

Defendant, L. C. Lamar Clemmons, appeals his jury trial conviction of third-degree home invasion, MCL 750.110a(4). The trial court sentenced Clemmons as a fourth-offense habitual offender, MCL 769.12, to 48 months to 20 years in prison for this conviction. He appeals as of right, challenging only his sentence, specifically the scoring of certain offense variables (OVs). Finding no error, we affirm.

## I. BACKGROUND

This case arises out of Clemmons breaking into his ex-girlfriend's house. The victim, Clemmons's ex-girlfriend, had a residence in Lansing and a residence in Saginaw. While she was in her Lansing home, she received a notification from the Ring[1] doorbell camera at her Saginaw house that a person was at the door of that house. At the same time, Clemmons called the victim. Upon checking the camera and answering the call, the victim learned that Clemmons was at the Saginaw house. Through the cameras, the victim could see Clemmons destroying property inside the house, and she could hear shattering on the phone call. Clemmons cursed and yelled at the victim during the phone conversation. Regarding the call, the victim testified:

---

[1] Ring, LLC is a home security company that manufactures home security and "smart home" devices, including doorbell cameras, alarms, and home security cameras.

He called me, he woke me up, and he started cussing like crazy. And if you don't mind me saying it, bitch, you think I'm playing with you? I'm tired of your shit. And, basically, he's always threatening and telling me not to come back to Saginaw, so I better not see you back here in Saginaw. I mean, you think I'm fucking playing with you?

And then I was telling him, like, what are you talking about; as I'm looking at the camera, like, what are you talking about? And then that's when he—I'm going to show you. And he started destroying my house.

She testified that defendant began destroying the house by "hitting the TV." The victim also testified that she heard "shattering" as she was on the phone with Clemmons. She testified that Clemmons called her again after he left the home and told her not to return to Saginaw

The night of the break-in, the victim drove to the Saginaw house and called the police, but Clemmons had left. He later returned, but left again when the victim called the police again. The victim found that the Ring camera was missing and that cameras inside the house had been taken down. A TV, a table, and windows were destroyed. And there was damage in the bathroom. Clemmons continued to threaten the victim over the next few days.

The jury found Clemmons guilty of third-degree home invasion. The trial court sentenced him in August 2023. The victim did not provide a victim-impact statement to the probation agent who prepared Clemmons's presentence investigation report (PSIR). But she spoke with the agent. She stated that during Clemmons's pretrial incarceration, she had peace. According to the report, "[s]he stated that [Clemmons] will not leave her alone and fears that once he is back in the community he will continue to harass and come after her."

The victim also gave a victim-impact statement at sentencing. She described how the previous year had been "peaceful" because of Clemmons being incarcerated. The victim also stated that she had "been dealing with this for three years," that she lost her job and "many a cars" because of Clemmons, and that she was "struggling because of [Clemmons]." She expressed that a personal protection order (PPO) or a no-contact order would not stop Clemmons. The victim also stated that she "just gave birth to a child" and that she feared for her child because Clemmons had sent threats to her teenage son. She expressed that she was "tired," and that she "lost so much" because of Clemmons. She stated that "I just want it to stop" and reiterated that a PPO or a no-contact order would not help her.

Defense counsel did not make any objections at the hearing. The trial court imposed the highest in-guidelines sentence possible, sentencing defendant to 48 months to 20 years in prison, with credit for 407 days served. This appeal follows.

II. OV 4

Clemmons first argues that the trial court erred by assessing 10 points for OV 4 because there was not adequate evidence to support a finding that the victim experienced serious psychological injury. We disagree.

-2-

Clemmons did not raise the issue at sentencing or in a motion for resentencing or to remand, it is unpreserved and subject to plain-error analysis. Because this issue is unpreserved, we review for plain error affecting substantial rights See *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018) ("To preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals."). See also *People v Brown*, 326 Mich App 185, 191-192; 926 NW2d 879 (2019). To obtain relief under the plain-error rule, a defendant must prove that (1) an error occurred, (2) the error was plain, and (3) that the plain error affected substantial rights, usually meaning the error affected the outcome of the proceedings. *People v Anderson*, 341 Mich App 272, 280; 989 NW2d 832 (2022). If a defendant satisfies these three requirements, we must determine whether the plain error warrants reversal, in other words, whether it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Sometimes identified as a fourth prong of plain-error analysis, this last step conceptually overlaps with the third prong. *People v Davis*, 509 Mich 52, 75-76; 983 NW2d 325 (2022).

Clemmons's claim regarding OV 4 fails on the first prong of the analysis. OV 4 addresses psychological injury to a victim. MCL 777.34(1). If "[s]erious psychological injury requiring professional treatment occurred to a victim," the trial court must assess 10 points for OV 4. MCL 777.34(1)(a). The trial court must assess 10 points for OV 4 "if the serious psychological injury *may require* professional treatment," and the statute notes that "the fact that treatment has not been sought is not conclusive." MCL 777.34(2) (emphasis added).

"The trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). However, a victim's feelings of fear during the offense itself, on their own, are not sufficient to establish serious psychological injury under OV 4. *People v White*, 501 Mich 160, 164-165; 905 NW2d 228 (2017). Nonetheless, such feelings of fear during the offense "may be considered together with other facts in determining how to score OV 4." *Id*. at 165 n 3. Additionally, there must be evidence in the record of serious psychological injury to support the assessment of 10 points for OV 4; the trial court may not infer serious psychological injury solely from the nature of an offense. See *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012) (holding that it was error for the trial court to "assume that someone in the victim's position would have suffered psychological harm" because of the nature of the offense).

The victim's statement to the agent who prepared defendant's PSIR, together with the victim's victim-impact statement at sentencing, established that she experienced serious psychological injury from the offense. She described continuing and persistent feelings of fear and expressed her belief that a no-contact order or personal protection order would not keep her or her family safe. She repeated multiple times that she was "tired," which, in context, may represent a psychological or emotional impact. As Clemmons notes, the victim did state that the previous year had been "peaceful." But she explicitly attributed that peacefulness to the fact that Clemmons had been incarcerated for the past year. Most critically, she expressed her fear that judicial measures short of incarceration (i.e., a PPO) would not stop Clemmons from harassing her. The record supports a finding that the victim suffered "fright" and "feelings of being . . . unsafe."

-3-

*Armstrong*, 305 Mich App at 247. The record therefore does not demonstrate that the trial court plainly erred by assessing 10 points for OV 4.

Relatedly, Clemmons argues in the alternative that trial counsel was ineffective for failing to object to the assessment of 10 points for OV 4. We disagree.

When a defendant does not move for a *Ginther*[2] hearing, our review is limited to errors apparent on the record. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). "The standards for 'plain error' review and ineffective assistance of counsel are distinct, and therefore, a defendant can obtain relief for ineffective assistance of counsel even if he or she cannot demonstrate plain error." *People v Hughes*, 506 Mich 512, 523; 958 NW2d 98 (2020), citing *People v Randolph*, 502 Mich 1; 917 NW2d 249 (2018). Whether a defendant has received effective assistance of counsel is a mixed question of fact and constitutional law. *Abcumby-Blair*, 335 Mich App at 227. This Court reviews findings of fact for clear error. *Id*. Clear error is present when this Court "is left with a definite and firm conviction that the trial court made a mistake." *Id*. at 227-228 (quotation marks and citation omitted). This Court reviews constitutional determinations de novo. *Id*. at 227.

The United States and Michigan Constitutions both entitle a criminal defendant to the assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. This counsel must be effective to satisfy this constitutional requirement. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Counsel is ineffective if "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that that outcome would have been different." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023) (quotation marks and citation omitted). There is a reasonable probability that the outcome would have been different if the probability is sufficient to undermine confidence in the outcome. *Id*.

The burden is on the defendant to establish the factual predicate for an ineffective-assistance claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). There is a "strong presumption that counsel's performance was born from sound strategy." *Yeager*, 511 Mich at 488. Failing to make an objection that would be futile does not render trial counsel ineffective. *People v Muniz*, 343 Mich App 437, 449; 997 NW2d 325 (2022). "However, counsel's strategic decisions must be objectively reasonable." *Yeager*, 511 Mich at 488.

As discussed, the trial court's finding that the victim experienced serious psychological injury was not error, let alone plainly erroneous. Trial counsel may still be deficient even if there was no plain error. See *Randolph*, 502 Mich at 12 ("While in some instances an obvious error may correlate with counsel's ineffectiveness in responding to it and the prejudice resulting from that failure, in others [sic] instances it will not."). However, there was no error, plain or otherwise, to warrant an objection in this case. The victim's victim-impact statement expressed continuing fear and unsafety because of Clemmons. This echoed and corroborated the fears she expressed to the probation agent as memorialized in the PSIR. This is sufficient to establish serious psychological injury when scoring OV 4. See *Armstrong*, 305 Mich App at 247. An objection or

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

challenge to the scoring of this variable therefore would have been futile. Because a challenge or objection would have been futile, defendant's trial counsel was not ineffective for failing to object to the scoring of OV 4.

## II. OV 10

Clemmons next argues that the trial court plainly erred by assessing 10 points for OV 10 because the victim was in a different city at the time of the offense, and therefore not vulnerable. We disagree.

Clemmons did not preserve this issue for review. We are therefore limited to a review for plain error affecting substantial rights. *Chelmicki*, 305 Mich App at 69.

OV 10 addresses whether a defendant exploited a vulnerable victim. MCL 777.40(1). The trial court must assess 10 points for this variable if a defendant "exploited . . . a domestic relationship." MCL 777.40(1)(b). The statute defines "exploit" as "to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). A defendant does not need to have direct contact with a victim to exploit the victim. *People v Needham*, 299 Mich App 251, 255-256; 829 NW2d 329 (2013) (holding that "the circuit court correctly assigned points for OV 10 despite that defendant did not have contact with his young victims").

Clemmons argues that the victim was not vulnerable because she was in Lansing when he entered her house in Saginaw. His argument fails because of our holding in *Needham*, 299 Mich App at 255-256, that a court may still find exploitation of a vulnerable victim by a defendant who does not have contact with the victim. Furthermore, the facts in this case demonstrate that Clemmons did exploit his domestic relationship with the victim. He used a spare key to access the victim's home. The victim gave Clemmons when—and presumably because—they were in a domestic relationship. During that relationship Clemmons gave three spare keys to people he knew. Put simply, he would not have had access to this key but for his domestic relationship with the victim. He then used it to enter her house to destroy her property. This satisfies the requirements of OV 10. The trial court therefore did not plainly err by assessing 10 points for OV 10.

Clemmons argues alternatively that trial counsel was ineffective for failing to object to the assessment of 10 points for OV 10. We again disagree. Clemmons did not preserve this issue, so our review is limited to errors apparent on the record. *Abcumby-Blair*, 335 Mich App at 227. As discussed, the trial court did not err in its assessment of 10 points for OV 10. Therefore, any objection or challenge to the score would have been futile, and the decision not to raise the challenge is not a deficiency. See *Muniz*, 343 Mich App at 449. His ineffective-assistance-of-counsel claim related to OV 10 fails.

We affirm.

/s/ Noah P. Hood
/s/ James Robert Redford
/s/ Allie Greenleaf Maldonado